403 A.2d 1307

**Joseph E. BAKES et al., Plaintiffs,**

**v.**

**James W. SNYDER, Jr., Lehigh County Controller and David K. Bausch, Lehigh County Executive, Defendants.**

Supreme Court of Pennsylvania.

Argued March 12, 1979.

Decided June 29, 1979.

82

John P. Karoly, Jr., Allentown, for plaintiffs.

Jay B. Oppenheim, James G. Kellar, John E. Roberts, Allentown, Gerald Gornish, Dept. of Justice, Harrisburg, for defendants.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

OPINION OF THE COURT

ROBERTS, Justice.

At the November, 1975 municipal election, voters of Lehigh County elected plaintiffs—the Sheriff, Recorder of Deeds, Register of Wills, Prothonotary, Clerk of Courts, and Coroner—to four-year terms of office. Plaintiffs' four-year terms began January 5, 1976 and, with the exception of the Prothonotary, each plaintiff may seek re-election at the November, 1979 municipal election.[1] Since taking office, each plaintiff has received the annual salary for his office fixed by Act No. 113 of November 1, 1971.[2] Now, over three years after their election in November, 1975, plaintiffs seek a writ of mandamus directing defendants, the Lehigh County Controller and the Lehigh County Executive, to pay plaintiffs increased salaries in accordance with Act No. 223 of October 7, 1976.[3]

Act 223 amends Act 113 to provide county officers of counties of the second through eighth classes "immediate" salary increases. Act 223, § 2. But the Act, by its specific terms, applies only "when permitted by the Constitution of the Commonwealth of Pennsylvania." Id. Article III, § 27 of the Constitution of Pennsylvania (1968) expressly directs that "[n]o law shall extend the term of any public officer, or

1. The Lehigh County Home Rule Charter, approved at the November, 1975 municipal election, see infra Part IV, phases out the Office of the Prothonotary effective January, 1980.

2. Act of November 1, 1971, P.L. 495, §§ 1 et seq.

3. Act of October 7, 1976, P.L. 1101, §§ 1 et seq., 16 P.S. §§ 11011–1 et seq. (Supp.1978). The following table identifies each plaintiff's present annual salary, the annual salary sought under Act 223, and the corresponding annual increase:

| Plaintiff and Row Office | Present Salary | Salary Sought Under Act 223 | Increase |
|---|---|---|---|
| Bakes, Sheriff | $17,500 | $20,500 | $3,000 |
| Black, Recorder of Deeds | 17,500 | 20,500 | 3,000 |
| DeLong, Register of Wills | 17,500 | 20,500 | 3,000 |
| Joseph, Clerk of Courts | 17,500 | 20,500 | 3,000 |
| Nagle, Prothonotary | 17,500 | 20,500 | 3,000 |
| Weir, Coroner | 13,000 | 16,000 | 3,000 |

increase or diminish his salary or emoluments, after his election or appointment." Plaintiffs, as public officers elected in November, 1975, eleven months before the October, 1976 enactment of Act 223, are precluded from receiving the increased salaries fixed in that Act and are not entitled to the relief they seek. Accordingly, we enter judgment for defendants.[4]

# I

This Court has not previously considered the effect of article III, § 27 of the Constitution of 1968 upon county officers' claim to increased compensation during their terms of office. This constitutional provision is identical to article III, § 13 of the Constitution of 1874. In a variety of settings, this Court consistently has held that § 13 prohibited county officers from receiving increased compensation during their elected terms of office. For example, in *Commonwealth ex rel. Woodring v. Walter*, 274 Pa. 553, 118 A. 510 (1922), a county commissioner claimed that, because the county's population had increased, he was entitled to the greater salary provided by law for commissioners in counties of that population. On the authority of article III, § 13, this Court rejected the commissioner's claim:

"If the change in classification post-dates the election of the [county commissioner]—and this clearly appears in the present case, . . . —then it follows that the increased salary cannot be allowed."

*Woodring*, 274 Pa. at 556–57, 118 A. at 512.

Even though the language of article III, § 27 of our present Constitution is identical to that of article III, § 13 of

---

4. This Court has plenary jurisdiction over the present case. In October, 1978, plaintiffs filed a complaint in mandamus against defendants in the Court of Common Pleas of Lehigh County. In January, 1979, before the court of common pleas heard argument, the County Executive petitioned this Court to assume plenary jurisdiction and this Court granted the petition. The County Executive has moved for judgment on the pleadings.

   In view of our disposition, we need not address the County Executive's contention that plaintiffs should be precluded from asserting any claim to a retroactive salary increase on the ground that "they have delayed two years in demanding the same."

the Constitution of 1874, plaintiffs argue that the reference in article III, § 27 to "any public officer" does not include county officers. Plaintiffs contend that the proscription in article III, § 27 that "[n]o law shall extend the term of any public officer" would be superfluous if "any public officer" included county officers, whose terms of office are fixed under article IX, § 4, ¶ 2 (1968) at four years.[5]

This argument fails to demonstrate in any respect that the framers intended to exclude county officers from the constitutional prohibition against laws increasing salaries after election. Indeed, the very fact that an official serves a fixed term of office has led this Court on a number of occasions to conclude that the officeholder is precluded under article III, § 13 (1874) from receiving a pay increase after taking office, even where the office is non-constitutional. See e. g., *Commonwealth ex rel. Wolfe v. Moffitt*, 238 Pa. 255, 86 A. 75 (1913) (incumbent county "poor director" a "public officer" under Article III, § 13) (1874); *Richie v. Philadelphia*, 225 Pa. 511, 74 A. 430 (1909) (appointed real estate assessor a public officer).[6]

Plaintiffs point to article IX, § 4, ¶ 3 (1968), which provides that "[c]ounty officers shall be paid only by salary as provided by law for services performed for the county or any other governmental unit." Cf. Pa.Const. art. XIV, § 5 (1874) ("[t]he compensation of county officers shall be regulated by law"). Plaintiffs claim that article IX, § 4, ¶ 3 sets

5. Pa.Const. art. IX, § 4, ¶ 2 (1968) provides:
   "County officers, except for public defenders who shall be appointed as shall be provided by law, shall be elected at the municipal elections and shall hold their offices for the term of four years, beginning on the first Monday of January next after their election, and until their successors shall be duly qualified; all vacancies shall be filled in such a manner as may be provided .by law."
   See also art. XIV, § 2 (1874) (three year term); id. (as amended 1909) (four year term).

6. Joint Resolution No. 4 of 1971, P.L. 771, also is contrary to plaintiffs' view. The resolution proposed an amendment to Pa.Const. art. III, § 27 (1968) which would have provided for an automatic increase or decrease in the salary or emoluments of county officers upon a change in classification of a county during county officers' terms of office. (Voters rejected the. proposal at the May, 1971 election.)

forth the exclusive limitations upon the Legislature's authority to direct increased remuneration for county officers. Plaintiffs read article IX, § 4, ¶ 3 to permit increases in the salaries of county officers after the officers have been elected.

In *Commonwealth ex rel. Woodring v. Walter*, supra, 274 Pa. at 555, 118 A. at 511, this Court expressly recognized that the salary schedule which formed the basis for the county commissioners' claim was enacted "[t]o regulate the compensation of county officers, as directed by article XIV, section 5, of the Constitution [(1874)]," but still tested the commissioner's claim against article III, § 13 (1874). As this Court observed in *Richie v. Philadelphia*, supra, 225 Pa. at 513, 74 A. at 431 (discussing Constitution of 1874), "[t]he third article of the constitution is . . . a restraint upon the powers of the general assembly," to increase salaries during terms of office, while article IX merely authorizes the Legislature to "provide by law" for county officers' compensation within the limits of article III, § 27.[7]

## II

Plaintiffs next contend that economic factors operating since election and during their current terms "have actually diminished their salaries during their terms of office."[8] According to plaintiffs, the additional $3,000 provided in Act 223 is not a salary increase, but instead a "cost-of-living" adjustment, and thereby constitutionally permissible.

The Statutory Construction Act of 1972 directs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). It is

---

7. Plaintiffs also argue that, based upon article V (Judiciary) § 1 (1968) and Section 301 of the Judicial Code, 42 Pa.C.S.A. § 301, they should be accorded an exemption as quasi-judicial officers. See *Commonwealth v. Mathues*, 210 Pa. 372, 59 A. 961 (1904). Nothing in either article V (1968) or 42 Pa.C.S.A. §§ 101 et seq. supports plaintiffs' contention.

8. Brief for Plaintiffs at 30.

clear that the legislative language of Act 223 provides a salary increase and is not in any respect designed to create a "cost-of-living" adjustment. Indeed, the express terms of Act 223 establish with unmistakable clarity an increase in salaries to be effective October 7, 1976 "when permitted," in the words of the Legislature, "by the Constitution of the Commonwealth of Pennsylvania." This clear and specific language articulates the Legislature's respect for the boundaries of its own authority, including the limitation of article III, § 27 on the power to increase salaries. Moreover, had the Legislature in Act 223 intended anything other than a salary increase, it would not have utilized a single, specific dollar increase, the traditional legislative means of increasing salaries. Act 223, if presently applied to plaintiffs, would provide a single salary increase of $3,000 in October, 1976, with no increase thereafter during the remaining three and one-fourth years of plaintiffs' terms. This increase of $3,000 is applicable to each row officeholder without relation to existing salaries. For example, the Coroner of Lehigh County receives a salary of $13,000, while the other plaintiffs receive $17,500. Yet Act 223, if applied to plaintiffs, would provide each officeholder the same $3,000 increase. Unlike other plaintiffs, who receive a seventeen per cent increase, the Coroner would receive an increase greater than twenty-three per cent. This fixed increase of $3,000, for officers receiving salaries of $13,000 or $17,500, directly refutes any suggestion that the Legislature in Act 223 sought to establish, as plaintiffs claim, a "cost-of-living" adjustment.

Had the Legislature in Act 223 intended to establish a "cost-of-living" adjustment, it would have articulated such a scheme of compensation by clear and specific language and would not have used the traditional language providing salary increases. The Legislature indeed knows what language to employ when it seeks to enact "cost-of-living" legislation. For example, in the State Employees' Retirement Code, 71 Pa.C.S.A. § 5708, the Legislature, in providing "cost-of-living" supplements to annuitants retiring before

March 1, 1974, utilizes the specific expression "cost-of-living" on no less than seven occasions. By clear language absent in Act 223, "cost-of-living" supplements are to be "determined as a percentage applied to the entire retirement annuity to which [annuitants were] entitled prior to March 1, 1974." Id.[9] Subsection (b) of 71 Pa.C.S.A. § 5708 further enumerates several "percentages" to be applied in the formula for calculating annuitants' "cost-of-living supplements." [10] Also by specific language not found in Act 223, House Bills Nos. 1690 and 1803 of 1977 (Printer's Bills Nos. 2050 and 2197) would have further amended Act No. 113 of 1971 to provide county officers, in the language of both the titles and bodies of the proposed bills, "a cost-of-living allowance." These proposed bills, like the Retirement Code, repeatedly utilize the words "cost-of-living." The proposed legislation, unlike Act 223's provision for a single, fixed dollar increase in county officers' salaries, would accord county officers a

9. Under Subsection (b), the "cost-of-living supplement" is to be payable under the same terms and conditions as the "option plan" in effect as of the effective date of Section 5708. Subsection (c) places limitations upon payments of "cost-of-living supplements" enacted after the death of members.

10. Subsection (b) provides in full:
"The percentage which is to be applied in the determination of the cost-of-living supplements, shall be determined on the basis of the effective date of retirement as follows:

| Effective date of retirement | Percentage factor |
|---|---|
| July 1, 1971 to February 28, 1974 | 5% |
| July 1, 1970 to June 30, 1971 | 10% |
| July 1, 1969 to June 30, 1970 | 15% |
| July 1, 1968 to June 30, 1969 | 20% |
| July 1, 1967 to June 30, 1968 | 25% |
| Prior to July 1, 1967 | 30% |

Provided, however, That such cost-of-living supplement as determined above shall not be payable to an annuitant receiving a withdrawal annuity prior to the first day of July coincident with or following his attainment of superannuation age: And further provided, That any member terminating legislative service subsequent to November 30, 1970, shall be entitled to receive on account of Class D–3 service a maximum single life annuity per year of service as a regular member of the General Assembly which shall not be less than the corresponding maximum single life annuity, including any cost-of-living supplements, of a member retiring from legislative service November 30, 1970."

fluctuating, annual allowance based upon a detailed "cost-of-living" formula employing, inter alia, the changing "Consumer Price Index," a percentage of salaries, and a method of determining the time for payments.[11]

A comparison of Act 223 with other legislative attempts to enact "cost-of-living" adjustments compels the conclusion that "the words of [Act 223] are clear and free from all ambiguity." 1 Pa.C.S.A. § 1921(b). The Legislature enacted Act 223 to provide county officers a salary increase "when permitted by the Constitution of the Commonwealth of Pennsylvania," not a "cost-of-living" adjustment. Under the mandate of the Statutory Construction Act, "the letter of [Act 223] is not to be disregarded under the pretext of pursuing its spirit," and this Court must interpret Act 223 in

11. Both bills provide in relevant part:
"The rate for the allowance shall be determined by the State Treasurer on the basis of the 'Consumer Price Index for Urban Wage Earners and Clerical Workers (All Items)' published by the United States Department of Labor. The first cost-of-living allowance shall not exceed ten per cent of the present salary and for each year thereafter the allowance shall not exceed three per cent of the annual salary. As soon as the index figure for December of each year is available, the State Treasurer shall determine and publish the rate for the year in the Pennsylvania Bulletin. The cost-of-living allowance shall be payable in the month immediately following the month of publication in the Pennsylvania Bulletin. The cost-of-living allowance shall be the rate determined by the State Treasurer times the compensation and prior cost-of-living allowances for the office. The annual cost-of-living allowance shall be paid in the same manner as the annual compensation for the office."

\*　　\*　　\*　　\*　　\*　　\*

"This act shall not apply to any person who resigned from an office and was reappointed to the same office or appointed to another office for which the compensation was fixed by the act to which this act is an amendment until an election is held to fill the office from which such person resigned."

Legislatures of other jurisdictions similarly utilize express "cost-of-living" formulas. For example, Section 68203 of the California Government Code (West 1978) provides that California judges' salaries "shall be increased by that amount which is produced by multiplying the then current salary . . . by the percentage by which the figure representing the California consumer price index as compiled and reported by the California Department of Industrial Relations has increased in the previous calendar year, but not to exceed five percent (5%)."

accordance with its express language. Plaintiffs' argument that Act 223 should be interpreted as a "cost-of-living" adjustment is contrary to the express language of Act 223 and must be rejected.

## III

■ Plaintiffs also claim that article III, § 27 violates the equal protection clause of the fourteenth amendment to the Constitution of the United States. Here, as in *City of Charlotte v. Local 660*, 426 U.S. 283, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976), the challenged state action "must meet only a relatively relaxed standard of reasonableness in order to survive constitutional scrutiny." 426 U.S. at 286, 96 S.Ct. at 2038. Plaintiffs argue that "[t]he present term for any particular office could terminate for any number of legitimate yet unforeseen reasons. Once terminated the new office holder would qualify for the higher salary provision." [12] Plaintiffs contend that article III, § 27 thus creates an unequal distribution of benefits without regard for seniority and experience. The fact remains that article III, § 27, like similar provisions of constitutions of many states,[13] serves "to eliminate political or partisan pressure upon the incumbents of office after they had been elected or appointed." *Hadley's Case*, 336 Pa. 100, 105, 6 A.2d 874, 875 (1939). Article III, § 27 is indeed a proper constitutional expression of public policy in this respect and its wisdom is not subject to successful challenge, or judicial modification.

■■ Plaintiffs' remaining contentions similarly must be rejected. Plaintiffs claim that, because Act 223 "reenacts and amends" Act No. 113 of 1971, article III, § 27 is not violated. Act 223, however, is itself a complete statutory enactment. Were we to accept plaintiffs' contention, we would violate the established principle that "[t]he constitutional provision forbidding an increase in salary or emolu-

12. Brief for Plaintiffs at 17.

13. E. g., N.Y.Const. art. XIII, § 7 (McKinney 1969); Ohio Const. art. II, § 20 (Page 1979). See also U.S.Const. art. II, cl. 7.

ments of a public officer during the term of office is inexorable and may not be avoided by indirection." *Sellers v. Upper Moreland Township School District*, 385 Pa. 278, 282, 122 A.2d 800, 801 (1956) (invalidating under Pa.Const. art. III, § 13 (1874) state law requiring school district to pay premium on bond of township treasurer for collection of taxes). Despite Act 223's express effective date of October 7, 1976, plaintiffs also would have this Court interpret Act 223 to take effect before plaintiffs took office in January, 1976. This argument, to prevail, would require this Court impermissibly to rewrite Act 223 and declare it operative even before its legislative adoption. This contention and result must indeed be rejected.

## IV

Plaintiffs' effort to obtain the requested relief based upon the Lehigh County Home Rule Charter also must fail. In November, 1975, at the election in which plaintiffs were elected to office, voters of Lehigh County approved a Lehigh County Home Rule Charter, which generally became effective "the first Monday of January, 1978." Charter, § 1102. Section 203(d) of the Charter provides that "[t]he District Attorney, Treasurer, Sheriff, Coroner, Prothonotary, Recorder of Deeds, Register of Wills and Clerk of Courts elected to four year terms of office in 1975 shall serve in the office for which they were elected for the remainder of their terms with no change in their compensation." (The parties agree that Section 203(d) of the Charter becomes effective in January, 1978). Plaintiffs claim that, even after the Charter's effective date, Act 223 prevails over the Charter, and directs increased salaries during the remainder of their terms of office. In the alternative, plaintiffs contend that, despite § 203(d) of the Charter, the Charter itself increases their salaries. On this record, we need not address whether Act 223 or the Charter governs plaintiffs' salaries as of January, 1978. For the reasons already set forth, Act 223

does not grant plaintiffs a salary increase during their terms of office, and the Charter expressly prohibits plaintiffs' request. See Charter, § 203(d); see also, id., § 205 ("[a]ny change in salary shall not become applicable to any incumbent elected officer until the commencement of a new term of office").

V

Finally, plaintiffs present a general claim that it is unreasonable, unfair, and illogical to deny them a salary increase. In reality, plaintiffs are asking this Court to fashion what this Court, rather than the Legislature, views to be a proper salary for county officers, a judgment this Court is without authority to make and one wholly within the exclusive constitutional province of the General Assembly. "There is no question but that the determining of such compensation for such officers is a legislative matter, and one the legislature cannot delegate." *Potter County Commissioners' Salary Case*, 350 Pa. 141, 144, 38 A.2d 75, 77 (1944) (voiding under Pa.Const. art. XIV, § 5 (1874) act authorizing court of common pleas of any county reduced in classification to fix salaries of county commissioners). See Pa.Const. art. IX, § 4, ¶ 3 (1968). The Legislature has expressly admonished that Act 223 applies "when permitted by the Constitution of the Commonwealth of Pennsylvania," thus emphasizing the traditional presumption that the Legislature does not intend an unconstitutional result. 1 Pa.C.S.A. § 1922(3) (Supp.1978). Proper recognition of legislative and judicial functions requires this Court to reject plaintiffs' invitation to increase, on any theory, county officers' salaries fixed by the Legislature.

Plaintiffs' request for a writ of mandamus denied and judgment entered for defendants.

LARSEN, J., dissents and notes that the officials are clearly entitled to the cost-of-living increase.