502 A.2d 137

Thomas C. CLARK, District Attorney, Richard T. Nornhold, Sheriff, Richard G. Schuck, Prothonotary and Clerk of Courts of Snyder County, Appellees,

v.

Chester H. TROUTMAN, Guy R. Mitterling and Stanley B. Williams, Commissioners of Snyder County and T.W. Erdley, Treasurer of Snyder County, Appellants.

Supreme Court of Pennsylvania.

Submitted May 16, 1985.

Decided Dec. 10, 1985.

338

Robert L. Knupp, Harrisburg, for appellants.

Edward G. Mihalik, Jr., Middleburg, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The issue presented involves applicability of the doctrine of issue preclusion to an action to stay execution of and open a judgment which, although valid on its face when entered, was based upon an erroneous conclusion of law as determined by a subsequent pronouncement of this Court.

Appellees held the offices of district attorney, sheriff and prothonotary/clerk of courts of Snyder County, a county of the seventh class, on the effective date of Act 223 of 1976, Act of October 7, 1976, P.L. 1101. That Act provided immediate salary increases to commissioners, sheriffs, treasurers, controllers and auditors, part-time district attorneys, recorders of deeds, registers of wills, prothonotaries and clerks of courts, coroners and jury commissioners of counties of the second through eighth classes "when permitted

by the Constitution of the Commonwealth of Pennsylvania." In 1978, appellees brought an action in mandamus to compel appellants, Snyder County's commissioners and treasurer, to pay appellees increases in salary in accordance with Act 223. Appellants defended the action on the ground that mid-term salary raises to county officers contravened Art. III § 27 of the Pennsylvania Constitution. That provision states: "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." Similar disputes had arisen elsewhere in the Commonwealth; and, in reliance upon a decision of the Court of Common Pleas of Cambria County, on November 21, 1978, Common Pleas Court held PA. CONST. Art. III, § 27 inapplicable to salaries of county officials, granted declaratory judgment in favor of appellees and directed appellants to pay increased salaries under Act 223. No appeal was taken.

Appellants complied with the November 21st order until the pay period ending July 6, 1979 when they again refused to pay salary increases under Act 223. On June 29, 1979, this Court had decided that PA. CONST. Art. III, § 27 did indeed prohibit payment of the increases in salaries prescribed in Act 223 to county officers who already held office when Act 223 was enacted. *Bakes v. Snyder*, 486 Pa. 80, 403 A.2d 1307 (1979). Based on this Court's decision in *Bakes*, supra, appellants ceased paying salaries at the increased rates. Appellees issued a writ of execution for the difference between salaries due under Act 223 and salaries actually paid. Seeking relief from liability for payment of salary increases for pay periods ending after our decision in *Bakes*, appellants subsequently filed a petition to stay execution and open judgment. The Court of Common Pleas sustained appellants' petition. Commonwealth Court reversed, reasoning the question of appellees' entitlement to salary increases was res judicata, *Clark v. Troutman*, 79 Pa.Cmwlth.Ct. 83, 469 A.2d 328 (1983). For the reasons that follow we reverse.

■ The term "res judicata" is often sweepingly used, by courts and litigants alike, to refer to the various ways in which a judgment in one action will have a binding effect in a later action. "Res judicata" encompasses the modern principle of issue preclusion (traditionally known as estoppel), which is the common law rule that a final judgment forecloses relitigation in a later action involving at least one of the original parties, of an issue of fact or law which was actually litigated and which was necessary to the original judgment. *State Hospital for Criminal Insane v. Consolidated Water Supply Co.*, 267 Pa. 29, 110 A. 281 (1920). The purposes of the rule are the protection of litigants from the dual burden of relitigating an issue with the same party or his privy and the promotion of judicial economy through prevention of needless litigation. *Nemo debet bis vexari pro una et eadem cause; interest reipublicae res judicatas non rescindi.* Finality of litigation is essential so that parties may rely on judgments in ordering their private affairs and so that the moral force of court judgments will not be undermined.

■ Instantly we are concerned with the applicability of issue preclusion in a second action brought by parties who were the defendants in the original action, to relitigate the constitutionality of Act 223 salary increases to persons who were the original plaintiffs in the original action. Commonwealth Court's decision denying relief is in accord with the general rule of issue preclusion: When an issue of law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the same parties, whether on the same or a different claim. Restatement (Second) of Judgments § 27 (1982).

Appellants argue for an exception to the normal rule of estoppel in this case based upon the change in controlling law announced by this Court in *Bakes,* supra, and on the disparity of treatment which will be afforded appellees who, as the result of *Bakes,* will be the only county officers in the Commonwealth, elected prior to Act 223, who receive

increases in salary under that Act. There is ample support in the law for appellants' position that estoppel will not bar an action to cease continued payments of salary increases.

The Restatement (Second) Judgments (1982) provides in relevant part as follows:

**§ 28.   Exceptions to the General Rule of Issue Preclusion**

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

.      .      .      .      .

(2) The issue is one of law and ... (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws.

.      .      .      .      .

[Comment]

**c.   Change in applicable legal context;   avoidance of inequitable administration of the laws.**   Even when claims in two actions are closely related, an intervening change in the relevant legal climate may warrant reexamination of the rule of law applicable as between the parties.   Such reexamination is particularly appropriate when the application of the rule of issue preclusion would impose on one of the parties a significant disadvantage, or confer on him a significant benefit, with respect to his competitors....   But even when such competition is lacking, reexamination is appropriate if the change in the law, or other circumstances, are such that preclusion would result in a manifestly inequitable administration of the laws....

In determining whether the applicable legal context has changed, or that applying preclusion would result in inequitable administration of the law, it is important to recognize that two concepts of equality are in competition

with each other. One is the concept that the outcomes of similar legal disputes between the same parties at different points in time should not be disparate. The other is that the outcomes of similar legal disputes being contemporaneously determined between different parties should be resolved according to the same legal standards. Applying issue preclusion invokes the first of these concepts, treating temporally separated controversies the same way at the expense of applying different legal standards to persons similarly situated at the time of the second litigation. The problem is illustrated by the situation where a taxpayer's liability for tax in a certain transaction in one tax year is determined according to a particular interpretation of the tax law, and that interpretation is thereafter abandoned in favor of another interpretation. If issue preclusion is applied in a subsequent tax year, the taxpayer will receive treatment different from that accorded to other taxpayers similarly situated at that time. On the other hand, refusing to apply issue preclusion invokes the second concept of equality. Thus, in the situation posed, if the taxpayer's liability in subsequent years is determined according to the new interpretation of the law, the taxpayer will be treated in those years in the same way as other taxpayers but in a way inconsistent with the determination previously made with respect to him. Comparable problems can arise in other types of transactions in which the same fact pattern presents itself in adjudications occurring over the course of time.

In deciding whether to apply issue preclusion, or instead to apply a subsequent emerging legal standard, the choice is between two forms of disparity in resolution of legal controversy.... [T]he choice must be made in terms of the importance of stability in the legal relationships between the immediate parties, the actual likelihood that there are similarly situated persons who are subject to application of the rule in question, and the consequences to the latter if they are subject to different legal treatment. In this connection it can be particularly sig-

nificant that one of the parties is a government agency responsible for continuing administration of a body of law that affects members of the public generally, as in the case of tax law. Refusal of preclusion is ordinarily justified if the effect of applying preclusion is to give one person a favored position in current administration of a law.

See also illustrations 4 and 5. Another respected scholar also recommends that issue preclusion not be applied where the result would place the party who won on the issue in a favored position in the general administration of the law, or where a new determination is warranted to take account of an intervening change in controlling law.[*]

Similarly, the United States Supreme Court, which, by virtue of the enormous amount of litigation involving the federal government, frequently has occasion to review the propriety of application of the general principle of estoppel, has stated that collateral estoppel "is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities.... It must be confined to situations where ... the controlling facts and applicable legal rules remain unchanged.... [A] judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." *Commissioner v. Sunnen*, 333 U.S. 591, 599–600, 68 S.Ct. 715, 720, 92 L.Ed. 898, 907 (1948).

This rule was recently reaffirmed in *Limbach v. Hooven and Allison Co.*, 466 U.S. 353, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984) (*Hooven II*), which involved a federal constitutional question arising out of U.S. CONST. art. I, § 10, cl. 2. For purposes of computing an ad valorem personal property tax, the Ohio Tax Commissioner disallowed a manufacturer's deduction, from the total value of its inventory, for imported fibers which were stored in their original contain-

---

[*] See, James & Hazard, *Civil Procedure*, 626–627 (1985); Hazard, *Preclusion as to Issues of Law: The Legal System's Interest*, 70 Iowa L.Rev. 81, 86 (1984).

ers awaiting use in future manufacturing. The Supreme Court of the United States had previously rendered a decision applying the "original container" rule and allowing the deduction in an action which involved the same parties, the same tax and the same goods and containers, *Hooven and Allison Co. v. Evatt,* 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252 (1945) (*Hooven I*). In *Hooven II,* the Supreme Court of the United States unanimously reversed the Supreme Court of Ohio's holding that relitigation of the issue was precluded on collateral estoppel grounds. It reasoned that, as the rule of law applied in *Hooven I,* the "original container" rule, had been repudiated by subsequent decisions of that court, *Hooven I,* although never expressly overruled by later cases, no longer remained viable and could not shield the parties in a similar subsequent action. The U.S. Supreme Court's approach in *Hooven II,* although not binding on this Court, is helpful in analyzing the issue sub judice.

■■■ Consistent with the Restatement Second and the federal approach, we now hold that the change in decisional law of this Commonwealth, in the form of a holding by its highest Court that payment of salary increases under Act 223 to officials elected to office prior to its enactment is unconstitutional, constitutes the kind of change in legal climate which justifies abandonment of the general principle of estoppel. To hold otherwise in this case would not only perpetuate an error of constitutional dimension at public expense, but would place appellees in the unique position of being the only county officials in the Commonwealth who were elected prior to enactment of Act 223 who may receive salaries at the increased rate prescribed in that Act. Appellees may not avoid the consequences of this Court's decision in *Bakes* and continue to receive salary in amounts provided by Act 223. Under the circumstances, it was not error for Common Pleas Court to allow relitigation of the constitutional claim and to redetermine the merits of the controversy.

A more difficult question then whether appellees are entitled to continued payments of compensation at the increased rates, is the question whether appellees may retain salary increases already paid pursuant to the November 21st order. Under the facts of this case, appellants are estopped from asserting a claim for refund. The payments were made pursuant to a validly entered court order in favor of appellees. When the time for perfecting an appeal was passed, appellees were entitled to consider the controversy ended and their claim to the salary increases perfected. Furthermore, appellants' petition to open only sought relief from liability for continued payments of salary at the increased rate *for pay periods subsequent to June 29, 1979*, the date of our decision in *Bakes*. As only salary increases subsequent to June 29, 1979 were in issue, appellees have at all times been entitled to consider their right to the increased pay pursuant to the November 21st order vested. Under these circumstances, appellees interest in repose outweighs appellants' eleventh hour claim to refund of increases already paid to appellees.

The order of the Commonwealth Court is reversed and the order of the Court of Common Pleas sustaining the petition to stay execution and open judgment, vacating its prior order and terminating writs of execution thereon is reinstated.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Commonwealth Court is reversed and the Order of the Court of Common Pleas sustaining the petition to stay execution and open judgment, vacating its prior order and terminating writs of execution thereon is reinstated.

HUTCHINSON, J., filed a concurring opinion in which McDERMOTT, J., joined.

HUTCHINSON, Justice.

I join the majority's view that the doctrine of issue preclusion does not mandate continuance of these salary increases. This case was originally brought as an action in mandamus to enforce the appellees' asserted right to continuing salary increases as county officials under the Act of October 7, 1976, No. 223, P.L. 1101, providing such increases. Not having the benefit of our decision in *Bakes v. Snyder*, 486 Pa. 80, 403 A.2d 1307 (1979), Common Pleas entered an erroneous decree declaring that appellees were entitled to those increases on a continuing basis. I agree with the majority that the continuing aspects of that decree are not immunized by the doctrine of *res judicata*. However, I do not believe it is necessary to create or deal with exceptions to either collateral estoppel (now known as issue preclusion) or *res judicata*, which, properly understood, should have no application to the continuing operation of this decree. The action of mandamus, while denominated an action at law, is subject to equitable considerations as are also all petitions to open a judgment. Since our decision in *Bakes v. Snyder*, 486 Pa. 80, 403 A.2d 1307 (1979), deprived the original judgment of its logical basis, it seems to me inappropriate and inequitable to give it a continuing effect which would give these appellants future favors beyond those given other public officials in the same situation. It would be equally inequitable to require the county to pay salary increases which are unconstitutional. Therefore, I believe the original decision does not constitute the law of the case insofar as the continuing payments are concerned and that *res judicata* is inapplicable to them. I note that this view, on the facts of this case, is consistent with Restatement of Judgments 2d, § 328, and join the majority's disposition.

McDERMOTT, J., joins in this concurring opinion.