## Gallman v. Pennsylvania Property & Casualty Insurance Guaranty Association

*Brian L. Calistri,* for plaintiffs.
*Lise Luborsky,* for defendant.

HERRON, *J.,* June 26, 2001—This opinion addresses cross-motions for summary judgment. The first motion was filed by plaintiff Pennsylvania Manufacturer's Insurance Company, while the second was filed by defendant Pennsylvania Property and Casualty Insurance Guaranty Association. For the reasons set forth in this opinion, PMA's motion is denied, and PPCIGA's motion is granted.

## BACKGROUND

On January 21, 1992, plaintiff Anthony Gallman, was injured in the course and scope of his employment. PMA's motion at ¶2. At that time, PMA was his employer's workers' compensation carrier. PPCIGA's motion at ¶7. Gallman ultimately collected over $238,000 in workers' compensation benefits from PMA. PMA's motion at ¶4.

After his injury, Gallman was treated by Michael J.A. Ward M.D. PMA's motion at ¶5. Dissatisfied with his treatment, Gallman filed a medical malpractice action against Ward and others on July 24, 1992.[1] PPCIGA's motion at ¶8. PMA asserts that, under the terms of Ward's insurance policy with PIC Insurance Group Inc., PIC

---

1. *Gallman v. Ward,* no. 94-05268 (C.P. Chester).

would cover the first $200,000 of any loss, with the Pennsylvania Medical Catastrophic Loss Fund providing an additional $1 million in coverage. PMA's motion at ¶8. On January 21, 1998, however, PIC was declared insolvent by the Pennsylvania Commonwealth Court, PPCIGA's motion at ¶12, and became an insolvent insurer.[2] Under the terms of the Pennsylvania Property and Casualty Insurance Guaranty Association Act,[3] PIC's obligations were then assumed by PPCIGA. 40 Pa.C.S. §1803(b).

On June 14, 2000, Gallman executed a general release in exchange for a payment of $200,000 "pursuant to the provisions of the" Act and a promise of $450,000 from the CAT Fund. PPCIGA's motion at ¶14. Gallman and PMA subsequently filed the instant action seeking a declaratory judgment as to whether PPCIGA may offset the $200,000 release payment obligation with the $238,000 in workers' compensation benefits PMA paid to Gallman.[4]

---

2. "Insolvent insurer" is defined as follows:

"An insurer licensed to transact insurance in this Commonwealth, either at the time the policy was issued or when the insured event occurred, and against whom an order of liquidation with a finding of insolvency has been entered after the effective date of this article by a court of competent jurisdiction in the insurer's state of domicile or of this Commonwealth and which order of liquidation has not been stayed or been the subject of a writ of supersedeas or other comparable order." 40 Pa.C.S. §991.1802.

3. 40 Pa.C.S. §§991.1801-991.1820.

4. PMA implicitly argues that it is subrogated to Gallman's payment rights pursuant to 77 Pa.C.S. §671.

## DISCUSSION

Several unusual circumstances prevent the application of collateral estoppel to this case and allow the court to consider PPCIGA's substantive arguments. These arguments are ultimately persuasive, requiring the court to grant PPCIGA's motion and to deny PMA's motion.

Pennsylvania Rule of Civil Procedure 1035.2 allows a court to enter summary judgment "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action." A court must grant a motion for summary judgment when a non-moving party fails to "adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." *Ertel v. Patriot-News Co.,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996). Where there are material issues of fact, however, summary judgment may not be granted.

The statute at the center of this dispute is 40 Pa.C.S. §991.1817, under which "[a]ny amount payable on a covered claim . . . shall be reduced by the amount of any recovery under *other insurance*." 40 Pa.C.S. §991.1817(a). (emphasis added) Prior to February 10, 1995, the set-off allowance was narrower and permitted payment obligations to be set off *only* with recovery under *another covered claim,* then defined as a claim arising "under a property and casualty insurance policy of an insolvent insurer. . . ." 40 Pa.C.S. §§1701.103(5)(a), 1701.503(a), *repealed,* February 10, 1995.[5] Cf. *Sands v.*

---

5. Prior to February 10, 1995, the relevant setoff provision read as follows:

"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which

*Pennsylvania Insurance Guaranty Association,* 283 Pa. Super. 217, 224, 423 A.2d 1224, 1227 (1980) (holding that a claim arising under an automobile insurance policy was not a covered claim).[6]

The parties appear to agree that, under the pre-February 10, 1995 statute, PPCIGA is not entitled to set off the payment with the PMA's payments to Gallman, while the current version of the Act permits the setoff.[7] PPCIGA argues that, because PIC was declared insolvent after February 10, 1995, the broader allowance applies and permits the setoff. PMA counters that the date of Gallman's injury is the critical date and that the narrower definition applies to preclude the setoff.

## I. *Collateral Estoppel Does Not Preclude the Court From Considering the Issues in Dispute*

Before the court can address the substantive matters in dispute, it must first consider PMA's collateral estoppel argument, which, if accepted, precludes PPCIGA from asserting that it may offset the payment with Gallman's recovery from PMA. The doctrine of collateral estoppel, also known as claim preclusion, "operates to prevent a question of law or issue of fact which has

is also a covered claim, shall first be required to exhaust his right under such policy. Any amount payable on a covered claim under this Act shall be reduced by the amount of any recovery under such insurance policy." 40 Pa.C.S. §1701.503(a), *repealed*, February 10, 1995.

6. This definition of "covered claim" was also revised as of February 10, 1995. See 40 Pa.C.S. §991.1802.

7. This can be inferred from PMA's almost exclusive focus on why the newer Act does not apply and from PPCIGA's failure to discuss the pre-February 15, 1995 statute in any depth.

once been litigated and fully determined in a court of competent jurisdiction from being relitigated in a subsequent suit." *Spisak v. Edelstein,* 768 A.2d 874, 876-77 (Pa. Super. 2001) (quoting *Incollingo v. Maurer,* 394 Pa. Super. 352, 356, 575 A.2d 939, 940 (1990)). The doctrine requires the satisfaction of four elements:

"Collateral estoppel applies when the issue decided in the prior adjudication was identical with the one presented in the later action, there was a final judgment on the merits, the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in the prior adjudication." *In re Iulo,* 766 A.2d 335, 337 (Pa. 2001) (citing *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975)).

To support its argument, PMA has attached to its motion a copy of a motion for summary judgment (Liberty motion) submitted in *Liberty Mutual Insurance Co. v. Pennsylvania Property and Casualty Insurance Guaranty Association,* January term 2000, no. 4424 (C.P. Phila. May 7, 2001) (*Liberty* action) by plaintiffs Liberty Mutual Insurance Co. and Catherine O'Brien. The circumstances described in the Liberty motion are similar to those in the instant matter: after being injured at work in 1990, O'Brien sued her treating physician, who was insured by PIC, for malpractice. After O'Brien settled her claims in November 1998, PPCIGA sought to offset its obligations due O'Brien with amounts she had received from Liberty, her employer's workers' compensation insurance company. Judge Nitza I. Quinones Alejandro granted the Liberty motion on December 19, 2000 and

ordered PPCIGA to pay O'Brien the amount PPCIGA had claimed as a setoff.

On the surface, PMA has satisfied all of the elements of collateral estoppel. PPCIGA was a defendant in the *Liberty* action. As in this case, Liberty and PPCIGA filed cross-motions for summary judgment, allowing the inference that PPCIGA had a full and fair opportunity to litigate the matters in dispute. In addition, the issues in dispute in the *Liberty* action are the same as those here,[8] and Judge Quinones Alejandro's order granting the Liberty motion constitutes a final judgment on the merits.[9]

---

8. As noted in Judge Quinones Alejandro's May 7, 2001 opinion, the issue in the *Liberty* action was whether the Act "applies retroactively to plaintiff O'Brien requiring an offset of their workers' compensation benefits received in 1992 for injuries suffered in 1990, and when her medical malpractice action, filed in 1993, was settled in 1998 (after the effective date of the [Act])." *Liberty Mutual Insurance Co. v. Pennsylvania Property and Casualty Insurance Guaranty Association,* slip op. at 6, January term 2000, no. 4424 (C.P. Phila. May 7, 2001) (Quinones Alejandro, J.). Indeed, even the timing in the two actions are identical: injury, malpractice action, amendment, insolvency and settlement.

9. The fact that PPCIGA has appealed the Liberty motion ruling is of no import:

"Generally, a judgment is final for purposes of res judicata and collateral estoppel unless and until it is *reversed* on appeal. *Shaffer v. Smith,* 543 Pa. 526, 673 A.2d 872 (1996); *Bassett v. Civil Service Commission of the City of Philadelphia,* 100 Pa. Commw. 356, 514 A.2d 984 (1986). A pending appeal does not, therefore, destroy the finality of a decision for purposes of collateral estoppel. *Shaffer; Bassett.* The rationale underlying the aforementioned rule is as follows:

"Postponing finality of a judgment for purposes of res judicata until appellate review is concluded tends toward duplication of litigation, or its protraction, with the second action marking time until the entire process of appeal is completed in the first action. . . . Holding that a judgment is final despite pendency of an appeal and is thus

To hold that the principles of collateral estoppel apply here, however, would be error. Judge Quinones Alejandro's original decision on the Liberty motion came prior to the Superior Court's decision in *Panea v. Isdaner*, no. 642 EDA 1999, 2001 WL 347831 (Pa. Super. April 10, 2001), which directly contradicts the court's ruling on the Liberty motion.[10] In her supplemental opinion, filed on May 7, 2001,[11] Judge Quinones Alejandro "acknowledge[d] that the rulings on the motions for summary judgment do not conform with the appellate court's holding" and requested either that the matter be remanded or that her original decision be reversed. Slip op. at 6-7. See also, *Clark v. Troutman*, 509 Pa. 336, 341, 502 A.2d 137, 139 (1985) (quoting Restatement (Second) of Judgments (1982) section 28 for the exception to collateral estoppel principles where "[t]he issue is one of law and . . . (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws"). In addition, PPCIGA has identified and submitted several trial court opinions in which the arguments presented in its motion were acceped.[12] See *Es-*

available for res judicata in a second action . . . seems the best general solution. . . .

"Restatement (Second) of Judgments §13, cmt. f, reporter's note." *Yonkers v. Donora Borough*, 702 A.2d 618, 620-21 (Pa. Commw. 1997). (emphasis in original)

10. The substance of the *Panea* court's decision is discussed in greater detail *infra*.

11. *Liberty Mutual Insurance Co. v. Pennsylvania Property and Casualty Insurance Guaranty Association*, slip op., January term 2000, no. 4424 (C.P. Phila. May 7, 2001) (Quinones Alejandro, J.).

12. PPCIGA has submitted *Panea v. Isdaner*, 39 D.&C.4th 129 (C.P. Phila. 1999), *O'Brien v. Muller*, March term 1993, no. 491 (C.P. Phila.

*tate of Ellis,* 460 Pa. 281, 287 n.7, 333 A.2d 728, 731 n.7 (1975) (noting the possible necessity of an exception to collateral estoppel "where successive litigation of identical issues by several plaintiffs is likely. In such cases, . . . a common defendant might successfully defend several actions, lose one and be subjected to a plea of collateral estoppel for the remaining cases"). Accordingly, PPCIGA is not collaterally estopped from making its arguments, and the court will undertake a substantive analysis of the parties' claims.

## II. *PPCIGA's Motion Must Be Granted*

PMA's substantive arguments boil down to the following: the statute in effect when Gallman was injured, which precludes PPCIGA from offsetting the payment with PMA's earlier payments, should be applied. Based on recent case law, admittedly decided two days before PMA filed its motion, the court must disagree.

In *Panea v. Isdaner,* no. 642 EDA 1999, 2001 WL 347831 (Pa. Super. April 10, 2001), the Pennsylvania Superior Court considered PPCIGA's obligations in three consolidated cases. Two of the underlying cases were malpractice actions brought against physicians insured by PIC and were based on conduct occurring prior to the Act's effective date. In both actions, the parties had entered into settlement agreements just prior to the declaration of PIC's insolvency. After the declaration of insolvency on January 21, 1998, PPCIGA asserted that it

March 1, 1999) (New, J.), and *Crouch v. Workers' Occupational Rehabilitation Center,* November term 1993, no. 4300 (C.P. Phila. October 12, 1999) (Moss, J.).

was entitled to offset PIC's obligations under the settlement agreements with amounts that the plaintiffs had received under their health insurance coverage. As a counterargument, the plaintiffs contended that their causes of action accrued prior to the Act's effective date and were thus governed by the pre-February 15, 2001 setoff provision.

The Superior Court ultimately sided with PPCIGA against the plaintiffs:

"The original version of the Act was created in 1970, under the name Pennsylvania Insurance Guaranty Association (PIGA). See Pennsylvania Insurance Guaranty Association Act, 40 P.S. §§1701.101-603. The current version repealed and replaced the 1970 Act and became effective as of February 10, 1995. The [plaintiffs] assert their cause of action accrued on December 3, 1993, and therefore the prior version of the Act must be applied. However, the time of the underlying injury upon which suit is brought is not the determinative event. As previously stated, *the provisions of the Act only become applicable upon an order of liquidation with a finding that an insurer is insolvent after the effective date of the Act.* Here, PIC was declared insolvent and ordered into liquidation on January 21, 1998, clearly after the effective date of the current version of the Act. Hence, the [plaintiffs'] reliance upon cases interpreting the repealed legislation is misplaced as these cases are no longer controlling. See *McCarthy v. Bainbridge,* 739 A.2d 200, 201 n.2 (Pa. Super. 1999) [, *aff'd,* 774 A.2d 1246 (Pa. June 20, 2001)] (stating '[t]he fact that appellees' cause of action arose prior to [the effective date of the Act] is irrelevant and does not exempt appellees from the appli-

cability of the amended statute.')." *Panea,* 2001 WL 347831 at \*5. (footnote omitted) (emphasis added)[13]

Given the decision in *Panea,* PMA's motion must be denied, and PPCIGA's motion must be granted.

## CONCLUSION

Given the recent Superior Court decision in *Panea v. Isdaner,* PMA's substantive and procedural arguments must be dismissed and its motion denied. In addition, PPCIGA's motion must be granted.

## ORDER

And now, June 26, 2001, upon consideration of the parties' motions for summary judgment in the above captioned matter, the respective memoranda, all other matters of record, and in accord with the opinion being filed contemporaneously with this order, it is hereby ordered and decreed that plaintiff Pennsylvania Manufacturer's Insurance Company's motion is denied and defendant Pennsylvania Property and Casualty Insurance Guaranty Association's motion is granted.

---

13. It must be noted that the arguments by the *Panea* plaintiffs in favor of the earlier statute were even stronger than Gallman's, as their releases preceded the declaration of PIC's bankruptcy.