**William M. BELITSKUS, Appellant,**

**v.**

**Lawrence STRATTON, Jr., Al Pingie, James M. Weaver, McKean County Commissioners, Thomas E. Ball, and McKean County Controller.**

Commonwealth Court of Pennsylvania.

Argued July 9, 2003.

Decided Aug. 13, 2003.

---

Harold B. Fink, Jr., Port Allegany, for appellant.

David F. Dieteman, Erie, for appellee.

BEFORE: PELLEGRINI, Judge, COHN, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN.

William Belitskus (Plaintiff)[1] appeals from an order of the Court of Common Pleas of McKean County that denied his motion for summary judgment and granted the cross motions filed by the current McKean County Commissioners, Lawrence

---

1. Plaintiff had styled his complaint as a class action, but class status was denied. That ruling is not an issue on appeal.

Stratton, Jr., Al Pingie and James M. Weaver, and the current McKean County Controller, Thomas E. Ball (collectively, Defendants). Plaintiff alleges that all salary increases since 1979 received by McKean County officials are invalid because they were not enacted properly under the statute. However, the Court finds that the increases were passed in conformity with the statute, and, in any event, Plaintiff's challenge is not timely.

The critical allegations in Plaintiff's amended complaint read as follows:

Plaintiff hereby alleges that all emoluments and increases in salary to all elected County officers paid by the County are illegal since 1979 for the reason that there has not been a properly conducted public meeting, nor has there been a legally sufficient County mandate for any amount, emoluments or increases of salary to any elected County officers covered by [Section 10.1[of] the Act of November 1, 1971, P.L. 495, *as amended*, added by Section 2 of the Act of November 1, 1979, P.L. 246, 16 P.S. § 11011–10.1 (General Salary Act).] From 1979 to 1994 raises and emoluments in pay were authorized, approved and made by the defendants without any affirmative vote, at any time, at any special Commissioner's meetings required by law to approve said increase and emoluments for pay to public officials thereby being contrary to law. Furthermore, in 1994 there was a salary increase of public officials approved by vote at a duly held meeting of the Commissioners. However, the Commissioners failed to establish in that vote a salary schedule for public officials and thus the increase voted on of three (3) to eight (8) percent for public officials, in fact, was illegal. Furthermore, there has been no increase in salary or emoluments properly established by proper vote at any meeting since that time and furthermore the public officials of McKean County received increases in their salary during their term in office which is additionally illegal and contrary to law.

Paragraph 8 of Amended Complaint.

Plaintiff further alleged that all elected County commissioners, recorders of deeds, registers of wills, coroners, sheriffs, prothonotaries, controllers, and treasurers governed by Sections 1–13 of the Act of November 1, 1971, P.L. 495, *as amended*, 16 P.S. §§ 11011–1 through 11011–13 (General Salary Provision Act) have "knowingly or unknowingly" received numerous illegal raises and emoluments in their salaries since 1979. Plaintiff asserts that these allegedly illegal increases have been paid by checks issued by the County Controller and that the most practical method of retrieving a substantial percentage of the allegedly improper payments is through a surcharge against the present Controller, Defendant Thomas E. Ball and the present County Commissioners, Defendants Lawrence Stratton, Jr., Al Pingie and James M. Weaver, making them jointly and/or severally liable for repayment. In addition, Plaintiff seeks payment of reasonable counsel fees in connection with this action.

Defendants filed answers denying the material allegations in the amended complaint. In new matter they raised the defenses of, *inter alia, laches* and the statute of limitations. After discovery the parties filed their cross motions for summary judgment.[2] Judge Charles R. Alexan-

---

**2.** The docket reflects a second set of preliminary objections, but we cannot find them in the certified record, nor can we find any order disposing of them. However, any failure to dispose of them would not have inured to the detriment of Plaintiff, so we proceed to

der, specially presiding, denied Plaintiff's motion and granted Defendants' cross motions. In so doing, he did not reach the affirmative defenses asserted by Defendants. This appeal by Plaintiff followed.

On appeal, we are asked to decide whether the salary increases violated either: (1) the General Salary Provision Act or (2) Article III, Section 27 of the Pennsylvania Constitution of 1968. We are cognizant that summary judgment may only be granted where material facts do not remain in dispute and the moving party is entitled to judgment as a matter of law. Pa. R.C.P. No. 1035.2. Our scope of review is limited to determining whether the trial court committed an error of law or abused its discretion. *Laich v. Bracey*, 776 A.2d 1022 (Pa.Cmwlth.2001).

We will first address Plaintiff's arguments regarding the statutory provision and then his constitutional challenge.

Section 10.1 of the General Salary Provision Act states:

**County commissioners; power to fix salaries of county officers**

(a) From and after the effective date of this section, the county commissioners shall have the power to fix the salary of all county officers governed by the provisions of this act.

(b) Salaries for all county officers governed by the provisions of this act shall be fixed by the county commissioners in the following manner:

(1) The county commissioners shall cause notice of intention to **fix** salaries at a special public meeting on a date certain to be published in a newspaper of general circulation at least ten days

in advance of such special public meeting.

(2) The special public meeting shall be held during the hours of 6:00 p.m. and 9:00 p.m., prevailing time, so as to afford the public the greatest opportunity to attend.

(3) The special public meeting shall be held in a centrally located area of the county.

(c) The county commissioners shall not reduce the salary of any county officer below the amount set forth in this act.

(d) No new salary schedule shall be adopted in a calendar year in which the county commissioners are to be elected.

(e) **Any salary increase shall be on a percentage basis** and applied equally to all county officials except that the county commissioners may provide a greater percentage salary increase to the lowest paid county official, other than the jury commissioners or county auditor, until his salary is equal to the other county officials except the jury commissioners, county auditors, district attorneys and county commissioners.

(Emphasis added.) Plaintiff's precise arguments pertaining to this statutory provision are that (1) for the years 1979,[3] 1982, 1986, 1990 and 1994, the Commissioners did not take any official action at the special meeting nights to fix salaries and that (2) Section 10.1 of the General Salary Act does not permit cost of living index increases in salaries because those salaries have to be fixed prior to the year the public officials are elected to office. Plaintiff interprets "fixed" to mean creating an actual salary schedule.

examine the cross motions for summary judgment.

**3.** Although the amended complaint challenges the 1979 salary increase, Plaintiff's brief does not discuss it. Whether or not the 1979 salary increase is before us does not affect our analysis.

▇ First, the plain language of the statute does not require that the salary proposal actually be "adopted" or that any other official action be taken at the special public meeting, but mandates that notice be given of "intention to *fix* salaries at a special public meeting." Although not defined in the statute, "fix" is defined in the dictionary as "establish." *Merriam–Webster's Collegiate Dictionary*, 440 (10th ed.2001). Plaintiff does not assert that the new salaries were not established at the special public meeting. Thereafter, in each instance there was a formal vote taken at a subsequent public meeting to "adopt," i.e., "to accept formally and put into effect," *id.* at 16, the salary that had been "fixed" at the special meeting to allow for a cost of living increase in accordance with the consumer price index. We do not believe the statute prohibits this procedure.[4] Furthermore, the subsequent vote at a public meeting is in many respects similar to a "curing" vote that has been sanctioned under the Sunshine Act, 65 Pa.C.S. §§ 701–716. For example in *Moore v. Township of Raccoon*, 155 Pa. Cmwlth. 529, 625 A.2d 737 (1993), where planning commission officials had an unscheduled, unannounced meeting at the home of a member of the commission to deliberate over a junkyard ordinance, the meeting violated the Sunshine Act. However, a subsequently held open meeting, where citizens could voice their opinions, cured this defect.

▇ Even if we had found that Section 10.1 had been violated, however, we must conclude that relief to Plaintiff would not be appropriate because his action is not timely under either the doctrine of *laches* or under the statute of limitations. There are two essential elements of the *laches* defense: "(1) a delay arising from the complaining party's failure to exercise due diligence and (2) prejudice to the asserting party resulting from the delay.... Whether the complaining party acted with due diligence depends upon what that party might have known by use of information within its reach, and prejudice may be found where some change in the condition or relation of the parties occurs during the period the complaining party failed to act." *Estate of Leitham*, 726 A.2d 1116, 1119 (Pa.Cmwlth.1999), *petition for allowance of appeal denied*, 560 Pa. 713, 743 A.2d 924 (1999). Here, the delay was more than two decades and there could not have been due diligence, since the matters complained of were ones for which the public was given the statutorily prescribed notice. Prejudice is also obvious as to the Commissioner Defendants since they took office with the reasonable understanding that they would receive a certain salary. Moreover, there is no dispute that *none* of the current Commissioners was in office when the allegedly illegal acts occurred.

To allow a taxpayer, no matter how noble his or her intentions, to assert, decades after a cost of living increase has been adopted, that it was illegal and should result in a surcharge against the present public officials, who were strangers to the alleged illegal increases, would not only violate the doctrine of *laches*, but also chill the willingness of members of the public to agree to accept such public offices. The

---

4. Plaintiff also asserts that the "fixing" could not be a percentage but had to be a sum certain. That assertion, however, is contrary to the express language in Section 10.1(e) which requires that any interest be on a "percentage basis."

Plaintiff additionally argues that President Judge Cleland's order ruling on the preliminary objections resolved "a factual dispute" that the salary increases were illegal. The order did no such thing, but merely stated that, for purposes of withstanding a demurrer, the pleading was sufficiently specific.

public welfare and the law cannot tolerate such a result.

■ Second, this action does not comply with the statute of limitations period in Section 5571(c)(5) of the Judicial Code, 42 Pa.C.S. § 5571(c)(5), which provides that "Questions relating to the alleged defect in the process of enactment or adoption of any ordinance ... of a political subdivision shall be raised by appeal commenced within 30 days after the effective date of the ordinance." Plaintiff did not commence this action within the statutorily prescribed time and thus, it is barred. This result is consistent with *Schadler v. Zoning Hearing Board of Weisenberg Township*, 814 A.2d 1265 (Pa.Cmwlth.2003). There, an allegation was made that municipal authorities had failed to advertise the public hearing and enactment of an ordinance. Schadler, who challenged the enactment ordinance on procedural grounds, argued that these advertising defects meant that the ordinance was void *ab initio* and the 30 day provision in Section 7771(c) of the Judicial Code was, thus, inapplicable. Judge Pellegrini, writing for the Court, disagreed and explained that if:

[A] municipal ordinance is rendered void *ab initio* any time defects in the process of the enactment or adoption exist and no time limits apply [it] would render ... Section 5571(c)(5) of the Judicial Code meaningless. In effect, what the provisions do is to make all ordinances valid, no matter the procedural defect, unless a challenge is brought within 30 days. Otherwise, challenges could be brought forever by arguing that the ordinance is void *ab initio* because of some defect in its enactment. No one then could ever rely on the ordinance with certainty because it would always be subject to a procedural challenge. Such an interpretation results in an absurd outcome and renders

... Section 5571(c)(5) of the Judicial Code meaningless, and, therefore cannot be upheld.

*Id.* at 1270. Plaintiff clearly did not bring his action within 30 days of the passage of any of the ordinances at issue here, and thus, his action would be barred.

■ Plaintiff has also alleged that the salary increases violated Article III, Section 27 of the Pennsylvania Constitution, entitled "Legislation," which provides that, "No *law* shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." As Defendants properly point out, the Supreme Court has held that the word "law" as used in that provision does not include an ordinance. In *Baldwin v. City of Philadelphia*, 99 Pa. 164 (1881), our Supreme Court had occasion to rule on this precise issue. Although it was construing the Pennsylvania Constitution of 1874, that provision is identical to the one at issue here. *Bakes v. Snyder*, 486 Pa. 80, 403 A.2d 1307 (1979). In *Baldwin*, the Court held that a city ordinance that increased the salary of the Chief Commissioner of Highways for the City of Philadelphia was not a "law" within the constitutional provision. Therefore, the city was obligated to pay the increase. The *Baldwin* Court explained that the term "law" as used in that Section means "a rule of civil conduct, prescribed by the supreme power *in the state* ...." *Id.* at 170 (emphasis added). Article III concerns legislation enacted by or prohibited to the *General Assembly*, not by municipal authorities. As was stated in *Richie v. Philadelphia*, 225 Pa. 511, 513, 74 A. 430, 431 (1909), discussing the Constitution of 1874, Article III is "a restraint upon the powers of the *General Assembly*" (emphasis added).

In addition, the *laches* argument as discussed above in the statutory context, applies here as well. *See Stilp v. Hafer*, 553

Pa. 128, 718 A.2d 290 (1998) (applying the *laches* doctrine to a constitutional challenge concerning the enactment of legislation). In particular, the long delay here has caused prejudice to the County, because now it must defend against actions taken decades ago, as well as causing prejudice to the present Commissioners, who were not in office when the alleged violation occurred.

Based upon the foregoing discussion, the order of the common pleas court is affirmed.[5]

## ORDER

**NOW,** August 13, 2003, the order of the Court of Common Pleas of McKean County in the above-captioned matter is hereby affirmed.

---

**5.** Due to our disposition of this matter, consideration of any other affirmative defenses raised by Defendants is unnecessary.

Further, because the cause of action pled against the Defendant Controller was prem-ised upon the notion that the salary increases were illegal, and we have held for the Commissioners on this issue, Plaintiff's cause of action against the Defendant Controller must necessarily fail.