O'LEARY, Robert and O'Leary, Patricia, h/w, Appellants,

v.

**LIBERTY MUTUAL INSURANCE CO., Appellee.**

**No. 90–1344.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 27, 1990.

Decided Jan. 22, 1991.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Pursuing a claim under his employer's underinsured motorist coverage for injuries sustained in an accident occurring in the course of his employment, Robert O'Leary ("O'Leary") petitioned a state court to compel Liberty Mutual Insurance Co. ("Liberty Mutual") to appoint an arbitrator. The state court denied the petition on the ground that workmen's compensation is the exclusive remedy for injured employees by reason of § 303(a) of the Pennsylvania Workmen's Compensation Act. O'Leary and his wife Patricia ("the O'Learys") then brought the instant diversity action in the district court seeking damages under the same policy. The district court granted summary judgment for Liberty Mutual, in light of the state court's order, on grounds of res judicata and collateral estoppel. The O'Learys appealed. Although we will affirm the district court's collateral estoppel determination, the appeal raises intricate questions regarding the applicability of that doctrine, and of the impact thereon of § 28(2)(b) of the Restatement (Second) of Judgments, which concerns the effect of an intervening change in the law.

## I. FACTS AND PROCEDURAL HISTORY

On April 24, 1986, while driving a vehicle owned by his employer, Perloff Brothers Inc. ("Perloff"), during the course of his employment, O'Leary was injured in a motor vehicle accident caused solely by the negligence of the other driver. Because his damages exceeded the coverage limits of the other driver's insurance policy, O'Leary made an underinsured motorist claim against Perloff's insurance carrier, Liberty Mutual.[1] When Liberty Mutual denied coverage, O'Leary made a demand for arbitration and selected an arbitrator pursuant to the requirements of the policy.[2]

---

Jerome J. Verlin, Verlin & Verlin, Bala Cynwyd, Pa., for appellants.

Lawrence W. Robinson, Thompson & Pennell, Philadelphia, Pa., for appellee.

Before SLOVITER, BECKER and WEIS, Circuit Judges.

1. Under section D(2) of the policy issued by Liberty Mutual to Perloff, O'Leary is an "insured" because he was "occupying a covered auto" at the time of the accident.

2. Section F(4) of the policy issued by Liberty Mutual to Perloff reads:
   ARBITRATION

a. If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle or do not agree as to the amount of damages, either party may make a written demand for arbitration. Each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree with-

When Liberty Mutual failed to select its arbitrator, O'Leary filed a Petition to Compel Appointment of Arbitrator pursuant to 42 Pa.Cons.Stat.Ann. § 7305 (Purdon 1982) in the Court of Common Pleas of Montgomery County, Pennsylvania.

In its answer to O'Leary's petition, Liberty Mutual asserted that it was immune from liability to provide underinsured motorist benefits because, under Pennsylvania law, workmen's compensation is the exclusive remedy available for employees injured during the course and scope of their employment. *See* Pennsylvania Workmen's Compensation Act § 303(a), 77 Pa. Stat.Ann. § 481(a) (Purdon 1990).[3] Thus, Liberty Mutual argued, O'Leary's claim for coverage under Perloff's policy was barred as a matter of law and his petition to compel arbitration should be dismissed. The Court of Common Pleas agreed and entered an order denying O'Leary's petition, stating:

> And now, this 9th day of May, 1989, after review of the briefs, precedents and statutes and after oral argument from both counsel, it is ordered that plaintiff's petition to compel appointment of arbitrators is hereby denied inasmuch as we find this court has jurisdiction herein and that plaintiff's instant claim for underinsured motorist benefits brought against the defendant, plaintiff's employer's insurer, for injuries sustained by plaintiff while in the course and scope of his employment is not within the ambit of the subject arbitration provision *as such claim is contrary to Section 303(a) of the Pennsylvania Workmen's Compensation Act, 77 P.S. § 481(a) and therefore is barred by the Exclusive Remedy Doctrine.* (See as instructive: *Rocca v. Pennsylvania General Insurance Co.,* 358 Pa.Super. 67, 516 A.2d 772 (1986); *Lewis v. School District Of Philadel-*

*phia;* [517] Pa. [461], 578 [538] A.2d 862 (1988); *Wagner v. National Indemnity Company,* 492 Pa. 154, 422 A.2d 1061 (1980).

*O'Leary v. Liberty Mutual Insurance Co.,* No. 89–1512 (Court of Common Pleas, Montgomery County, Pa., May 9, 1989) [hereinafter Order of May 9, 1989] (emphasis added).

O'Leary did not appeal the state court order. Instead, the O'Learys filed the present action in the district court for the Eastern District of Pennsylvania seeking to recover underinsured motorist benefits from Liberty Mutual. In its answer, Liberty Mutual stated that, as a result of the decision of the Court of Common Pleas in the earlier proceeding to compel arbitration, the O'Learys' action should be dismissed as barred by the doctrines of res judicata (claim preclusion) and/or collateral estoppel (issue preclusion). Liberty Mutual then moved for summary judgment. The O'Learys replied that res judicata and collateral estoppel were inapplicable, although their memorandum of law analyzed the case only in terms of the standards governing collateral estoppel. The district court granted Liberty Mutual's motion for summary judgment, holding that the O'Learys' suit was both barred by res judicata and collaterally estopped. This appeal followed.

## II.  PRECLUSION

In determining whether the O'Learys' suit before the district court is barred by res judicata or collaterally estopped because of the judgment of the Court of Common Pleas, we must look to the law of the adjudicating state. *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988). Because

---

in 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b.  Arbitration shall be conducted in accordance with the Pennsylvania Uniform Arbitration Act.

**3.**  Section 303(a) states:

The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes [sic], his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death ... or occupational disease....

the underlying issues solely involve questions of law, our review is plenary.

### A. *Res Judicata*

As the district court noted, Pennsylvania law prescribes four requirements for the invocation of res judicata. In particular, the two actions must share an identity of the: (1) thing sued upon or for; (2) cause of action; (3) persons and parties to the action; and (4) capacity of the parties to sue or be sued. *McNasby v. Crown Cork & Seal Co., Inc.*, 888 F.2d 270, 276 (3d Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990). It is not seriously in dispute that conditions (1), (3), and (4) are satisfied in this instance. Condition (2) is quite another matter.

■ The district court, in holding that the O'Learys' action was barred by res judicata, reasoned that the O'Learys were seeking "to obtain the same insurance coverage sought previously." By this, we take the district court to mean that the causes of action in the two suits were identical. We disagree. There is no bright-line test for determining when the causes of action in two suits are identical for res judicata purposes. We have, however, identified several criteria relevant to making such a determination. *See United States v. Athlone Industries, Inc.*, 746 F.2d 977 (3d Cir.1984). These include:

(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*Id.* at 984 (citations omitted).

■ We think it plain that none of these similarities exist with respect to the two causes of action at issue here. The wrongs for which the O'Learys sought redress are different in the two actions. In the Court of Common Pleas, O'Leary simply sought to force Liberty Mutual to arbitrate the underlying dispute, as it purportedly was obligated to do under the policy. In the present action, by contrast, the O'Learys directly seek an award of underinsured motorist benefits. The theories of recovery also differ in the two suits. O'Leary did not seek to recover damages in the first action. He only requested that the court compel Liberty Mutual to arbitrate. In the district court action, however, the O'Learys seek to recover underinsured motorist benefits on the theory that they are entitled to them under the terms of the policy.

No witnesses were necessary in the first action. O'Leary simply needed to produce the policy. In the present action, a variety of witnesses and documents would no doubt have been necessary to establish the amount payable to the O'Learys under the policy. Finally, the material facts alleged differ in the two suits. The only facts alleged in the first suit were that a policy of insurance existed between the parties and that it obligated Liberty Mutual to arbitrate O'Leary's claim. Obviously, many more facts, including, for example, the cause and extent of O'Leary's injuries, would have been necessary had the district court action proceeded to the merits. In sum, the criteria enunciated by *Athlone Industries* compel the conclusion that the causes of action in the two suits were not the same. The district court action thus was not barred by res judicata.

### B. *Collateral Estoppel*

■ The district court ruled in the alternative that the O'Learys' action was collaterally estopped because the *issue* whether § 303(a) of the Workmen's Compensation Act bars their claim for underinsured motorist benefits had in fact already been determined by the Court of Common Pleas. Under Pennsylvania law, which adopts the requirements of the Restatement (Second) of Judgments, a prior determination of a legal issue is conclusive in a subsequent action between the parties on the same or a different claim when (1) the issue was actually litigated; (2) the issue was determined by a valid and final judgment; and (3) the

determination was essential to the judgment. *See* Restatement (Second) of Judgments § 27 (1982); *Clark v. Troutman*, 509 Pa. 336, 340, 502 A.2d 137, 139 (1985). The O'Learys claim that none of the three elements of collateral estoppel are present here. To the contrary, we agree with the district court that all three requirements are satisfied in this case.

The issue was "actually litigated" notwithstanding O'Leary's assertion that *he* neither raised the issue in his petition to compel arbitration in the Court of Common Pleas nor addressed it in *his* brief. An issue is "actually litigated" when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." Restatement (Second) of Judgments § 27 comment d, at 255 (1982). There is no doubt that the issue was properly raised by Liberty Mutual as a defense to O'Leary's motion to compel arbitration. And there is no dispute that the issue was submitted for determination and actually determined by the Court of Common Pleas.[4] *See* Order of May 9, 1989, *supra* at 1064. It is irrelevant whether the issue was raised by O'Leary *himself* or addressed in *his* brief.

■ The O'Learys also argue, without citation of authority and in conclusory fashion, that the judgment of the Court of Common Pleas was not "valid or final." A judgment is "valid" when it has been rendered by a court of competent subject matter jurisdiction and the party against whom judgment is rendered either has submitted to the jurisdiction of the court or has been afforded adequate notice. *See* Restatement (Second) of Judgments § 1 (1982). The O'Learys proffer no evidence, nor do we discern any in the record, to suggest that any of these elements of validity have not been satisfied.[5] It also is obvious that the judgment of the Court of Common Pleas is "final" under the Restatement definition of the word. *See* Restatement (Second) of Judgments § 13 comment g, at 136 (1982); Order of May 9, 1989, *supra* at 1064.[6]

---

**4.** We explore whether the Court of Common Pleas properly concluded that it had jurisdiction to determine the issue *infra* at note 5.

**5.** One possible challenge to the "validity" of the judgment merits brief consideration. O'Leary argued before the Court of Common Pleas that, under Pennsylvania law, the court did not have subject matter jurisdiction to decide the § 303(a) issue. Although the O'Learys have not framed the argument in these terms on appeal, if indeed the court lacked jurisdiction, the judgment may not be "valid" as required by § 1 of the Restatement. The Restatement states that a challenge to a court's jurisdiction is grounds for denying collateral estoppel in a subsequent action if "[t]he subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." *See* Restatement (Second) of Judgments § 12(1) (1982). We thus review the law governing the Court of Common Pleas' jurisdiction to ascertain whether such "manifest abuse" occurred.

Generally, when presented with a petition to compel arbitration of an underinsured motorist claim, a court is limited to determining whether the policy contains an agreement to arbitrate and whether the dispute falls within the ambit of the arbitration clause. *See Rocca v. Pennsylvania General Insurance Co.*, 358 Pa.Super. 67, 70, 516 A.2d 772, 773 (1986). Once these preliminary elements are established, the court is obligated to submit the matter to an arbitrator without considering other factual or legal issues bearing on the merits of the dispute.

There is an exception to this general rule, however, in cases where "the issue is whether a particular provision of the contract is contrary to a constitutional, legislative or administrative mandate." *Daley–Sand v. West American Insurance Co.*, 387 Pa.Super. 630, 637, 564 A.2d 965, 969 (1989). If such an issue arises, "the courts properly exercise their jurisdiction over the entire matter." *Id.* Arguably, under this exception, once Liberty Mutual objected to O'Leary's petition to compel arbitration on the ground that the imposition of liability would be contrary to § 303(a) of the Pennsylvania Workmen's Compensation Act, the Court of Common Pleas was obliged to take jurisdiction and resolve the apparent conflict.

We will not attempt to analyze in detail here whether the Court of Common Pleas correctly concluded that it could retain jurisdiction to resolve the § 303(a) issue under the *Daley–Sand* exception. Suffice it to say that this presents difficult questions of Pennsylvania law. However, because the question is close, we are satisfied that the court's determination that it had subject matter jurisdiction to resolve the § 303(a) issue was not "a manifest abuse of its authority." The judgment therefore is "valid" for collateral estoppel purposes.

**6.** We note that the possibility that O'Leary still may have unexhausted avenues of direct appeal in state court does not undermine the finality of

The O'Learys also argue that resolution of the § 303(a) issue was not "essential" to the judgment. In so arguing, they appear to have adopted an idiosyncratic definition of "essential" for collateral estoppel purposes. As best we can understand their appellate brief, the O'Learys contend that resolution of the issue was not essential because the Court of Common Pleas *could have* avoided the issue by submitting the whole matter to an arbitrator. *See supra* note 5 (discussing court's jurisdiction, *vis a vis* arbitrator, to decide § 303(a) issue).

The relevant comment in the Restatement provides as follows:

> If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

Restatement (Second) of Judgments § 27 comment h, at 258 (1982). This Restatement definition does not incorporate the O'Learys' notion that an issue is not essential if, under some hypothetical resolution of the dispute, the issue could have been avoided. Rather, the sole focus of the Restatement's analysis is whether a particular issue, *which actually was decided,* was critical to the judgment or merely dicta. Under this standard, resolution of the § 303(a) issue was undoubtedly essential to the judgment of the Court of Common Pleas. Indeed, the court's order reflects that the § 303(a) issue was the sole basis for its judgment refusing to compel arbitration. *See* Order of May 9, 1989, *supra* at 1064.

In sum, we find that the § 303(a) issue actually was litigated, that the issue was determined by a valid and final judgment, and that this determination was essential to the judgment rendered. Accordingly, we are satisfied that the elements of collateral estoppel have been satisfied.

## III. THE "INTERVENING CHANGE" EXCEPTION TO COLLATERAL ESTOPPEL

■ The O'Learys argue finally that, even if we decide that the requirements for collateral estoppel are satisfied under Pennsylvania law, we should permit them to relitigate the § 303(a) issue under a special exception to the general rule of collateral estoppel. The O'Learys contend that, under § 28(2)(b) of the Restatement (Second) of Judgments, which was adopted by the Pennsylvania Supreme Court in *Clark v. Troutman,* 509 Pa. 336, 502 A.2d 137 (1985), relitigation should be permitted because there has been a "change in the applicable legal context" since the conclusion of their suit to compel arbitration. Section 28(2)(b) states:

> Section 28. Exceptions to the General Rule of Issue Preclusion
>
> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: ....
>
> (2) The issue is one of law and ... (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws.

Restatement (Second) of Judgments § 28(2)(b) (1982); *Clark,* 509 Pa. at 341, 502 A.2d at 139.

According to the O'Learys, there has been a change in both the statutory and common law regimes governing the interplay between workmen's compensation and underinsured motorist coverage in Pennsylvania. Prior to 1984, the provision of unin-

---

the judgment for collateral estoppel purposes. *See* Restatement (Second) of Judgments § 13 comment f, at 135 (1982) 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.416[1] (8th ed. 1988).

sured and underinsured motorist coverage in Pennsylvania was governed by the Uninsured Motorist Act ("UMA"), 40 Pa.Stat. Ann. § 2000 *et seq.* (Purdon 1971). Effective October 31, 1984, however, the Pennsylvania legislature enacted the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.Cons.Stat.Ann. § 1701 *et seq.* (Purdon 1990), replacing the UMA. Whereas the UMA contained no express statement regarding its interaction with workmen's compensation, the MVFRL expressly states:

> The coverages required by this subchapter shall not be made subject to an exclusion or reduction in amount because of any workers' compensation benefits payable as a result of the same injury.

75 Pa.Cons.Stat.Ann. § 1735.

Because the UMA did not affirmatively permit employees to recover both workmen's compensation and uninsured or underinsured motorist benefits, caselaw under the UMA has held uniformly that § 303(a) controls and that workmen's compensation is the exclusive remedy for an employee who attempts to collect uninsured or underinsured motorist benefits from his employer or employer's automobile insurance carrier. *See Lewis v. School District of Philadelphia,* 517 Pa. 461, 538 A.2d 862 (1988); *Roux Laboratories v. Turner,* 843 F.2d 704 (3d Cir.1988). The Court of Common Pleas apparently relied on these cases, decided under the UMA, in rejecting O'Leary's motion to compel arbitration, even though O'Leary was injured on April 24, 1986, and his claim was thus governed by the MVFRL. *See* Order of May 9, 1989, *supra* at 1064 (citing *Lewis* as authority for denial of motion to compel arbitration). The court's reliance on *Lewis* and the other cases decided under the UMA could not have been inadvertent. Liberty Mutual's brief discussed, at length, the

changing statutory landscape and the implications of MVFRL § 1735.[7] Liberty Mutual forcefully contended, moreover, in reliance on the few related decisions then existing under the MVFRL,[8] that workmen's compensation would continue to be an employee's exclusive remedy despite MVFRL § 1735.

Subsequent to the decision of the Court of Common Pleas, however, several cases have held that an employee is not prohibited under the MVFRL from recovering uninsured or underinsured motorist benefits from his or her employer's insurance carrier. *See Odom v. Carolina Casualty Insurance Co.,* 394 Pa.Super. 283, 575 A.2d 631 (1990), *allocatur granted,* —— Pa. ——, 582 A.2d 324 (1990); *Chatham v. Aetna Life & Casualty Co.,* 391 Pa.Super. 53, 570 A.2d 509 (1989); *American Universal Insurance Group v. Rhoades,* No. 89–3020, 1990 WL 1476 (E.D.Pa. Jan. 9, 1990); *American National Fire Insurance Co. v. Stewart,* 709 F.Supp. 641 (E.D.Pa.1989). These cases, the O'Learys argue, reflect a change in the "applicable legal context" under § 28(2)(b) of the Restatement warranting an exception to the ordinary application of collateral estoppel.

Contrary to the O'Learys' assertion, however, whether the MVFRL has effected a change in the law governing the interaction of workmen's compensation and uninsured or underinsured motorist benefits is by no means settled. Indeed, the Pennsylvania Superior Court appears to be split on the matter pending a decision of the Pennsylvania Supreme Court. *Compare Odom v. Carolina Casualty Insurance Co.,* 394 Pa. Super. 283, 575 A.2d 631 (1990), *allocatur granted,* —— Pa. ——, 582 A.2d 324 (1990), *with Azpell v. Old Republic Insurance Co.,* 382 Pa.Super. 255, 555 A.2d 168 (1989), *allocatur granted,* 524 Pa. 602, 569 A.2d 1362 (1989).[9]

---

7. O'Leary's brief focused entirely on the court's jurisdiction to reach the merits of the § 303(a) issue. *See supra* note 5.

8. *See Selected Risks Insurance Co. v. Thompson,* 520 Pa. 130, 552 A.2d 1382 (1989); *Dyll v. Bell Telephone Co. of Pennsylvania,* 1 Pa.D. & C. 4th 253 (Court of Common Pleas, Allegheny County, Pa., 1988).

9. The Pennsylvania Supreme Court also apparently plans to resolve the related question whether, under the MVFRL, workmen's compensation will continue to be the exclusive remedy available to an employee whose employer is *self-insured* for motor vehicle liability. *See Hackenberg v. SEPTA,* 384 Pa.Super. 335, 558

Even if there were a settled change in the law, as reflected by an unambiguous opinion of the Pennsylvania Supreme Court, we still would be unable to give the O'Learys the benefit of the evolving jurisprudence by permitting them to relitigate the issue. Contrary to the O'Learys' assertion, § 28(2)(b) does not stand for the proposition that an issue, once litigated and resolved, may be reopened whenever the governing law changes or clarifies. Such a broad exception would swallow the general rule, greatly undermining the twin goals of collateral estoppel—the avoidance of repetitive litigation and the promotion of finality of judgments.[10]

Although the proper application of § 28(2)(b) is largely unplumbed by the caselaw,[11] it is clear that O'Leary may not invoke § 28(2)(b) to relitigate an issue arising out of a dispute for which he has already had his day in court. Section 28(2)(b) prevents unfair invocation of collateral estoppel only if a later action involves a "different demand" than that presented in the first action. *Montana v. United States*, 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979) (quoting *United States v. Moser*, 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924)). In other words, the exception does not permit a party to relitigate an issue in a suit arising out of the same transaction or set of operative facts—e.g., the same automobile accident—that formed the basis of the first action. *See United States v. Stauffer Chemical Co.*, 464 U.S. 165, 175, 104 S.Ct. 575, 581, 78 L.Ed.2d 388 (1984) (White, J., concurring); *Moser*, 266 U.S. at 242, 45 S.Ct. at 67; *Cole v. Greyhound Lines, Inc.*, 220 Mont. 503, 504–506, 716 P.2d 611, 613 (1986). Since it is clear that O'Leary is seeking recovery in the district court for the same injury for which he ultimately had been seeking compensation in the Court of Common Pleas, § 28(2)(b) is inapplicable.

Rather, § 28(2)(b) appears intended to be invoked in an altogether different situation than that present here. This point is demonstrated by considering what might happen if O'Leary were to be involved in *another* accident in his employer's automobile while in the course of his employment. O'Leary might file a suit against Liberty Mutual to compel arbitration or to collect underinsured motorist benefits. Liberty Mutual might then try to defeat O'Leary's suit by arguing, once again, that § 303(a) prohibits recovery under the policy. Liberty Mutual might assert, moreover, that based on the judgment of the Court of Common Pleas in the earlier action, O'Leary is collaterally estopped from relitigating the § 303(a) issue.

If this hypothetical series of events were to occur, O'Leary, quite justifiably, could invoke § 28(2)(b) to defeat Liberty Mutual's collateral estoppel defense. If indeed there had been an intervening change in the applicable law, it would be unfair to bind O'Leary, *in an action arising out of a new incident*, to the prior determination of the § 303(a) issue. Such a rule would put O'Leary at a perpetual disadvantage relative to others whose employers have purchased underinsured motorists coverage from Liberty Mutual, solely because he had the bad fortune of having had the issue resolved against him under prior law. More importantly, such a rule would hinder the "administration of the laws" in that the courts would be forced to apply outdated rules of law to certain individuals. *See* Restatement (Second) of Judgments § 28 comment c, at 276–77 (1982).

The comments and illustrations to § 28 of the Restatement clearly reflect that it is this type of inequity that § 28(2)(b) seeks to avoid and that, should O'Leary return to

---

A.2d 860 (1989), *allocatur granted*, 524 Pa. 597, 598, 568 A.2d 1247, 1248 (1989).

**10.** "The purposes of [collateral estoppel] are the protection of litigants from the dual burden of relitigating an issue with the same party or his privy and the promotion of judicial economy through prevention of needless litigation.... Finality of litigation is essential so that parties may rely on judgments in ordering their private affairs and so that the moral force of court judgments will not be undermined." *Clark*, 509 Pa. at 340, 502 A.2d at 139.

**11.** A computer-assisted search of federal and state caselaw generated only 12 cases citing to § 28(2)(b). Most of these do not discuss the section in any detail.

court in a new dispute with Liberty Mutual, he may avail himself of its protection. The Restatement makes clear, in particular, that § 28(2)(b) is intended to avoid the inequity that would result if collateral estoppel were applied in the regulatory context, preventing application of changes in the law to certain individuals. *See, e.g.,* Restatement (Second) of Judgment § 28 illustrations 3 & 4, at 278 (1982) (presenting hypotheticals involving state liquor licensing authority and tax commissioner); *Hackley v. Hackley,* 426 Mich. 582, 595 n. 8, 395 N.W.2d 906, 912 n. 8 (1986) (discussing Restatement illustrations).[12]

Indeed, the one case cited by the O'Learys, *Clark v. Troutman,* 509 Pa. 336, 502 A.2d 137 (1985), fits squarely into this category. In *Clark,* a group of county officials sued the county, claiming that they were entitled to an immediate pay increase under the terms of a recently enacted state statute. The Court of Common Pleas held for the officials and awarded them the increase. Subsequently, the Pennsylvania Supreme Court declared that such pay increases were contrary to the Pennsylvania Constitution and the county immediately discontinued paying the increased salaries. The county officials brought a second suit claiming that the county's liability had been established in the first suit and that relitigation of the issue was precluded. The Pennsylvania Supreme Court held, based on § 28(2)(b), that relitigation of the issue of the county's liability for the pay increases was not precluded. The Court's holding is particularly instructive:

> Consistent with the Restatement Second and the federal approach, we now hold that the change in decisional law of this Commonwealth, in the form of a holding by its highest Court that payment of salary increases under Act 223 to offi-

cials elected to office prior to its enactment is unconstitutional, constitutes the kind of change in legal climate which justifies abandonment of the general principle of estoppel. To hold otherwise in this case would not only perpetuate an error of constitutional dimension at public expense, but would place appellees in the unique position of being the only county officials in the Commonwealth who were elected prior to enactment of Act 223 who may receive salaries at the increased rate prescribed in that Act.

*Id.* at 344, 502 A.2d at 141.

The Pennsylvania Supreme Court clearly understood that as a result of the earlier judgment, unless § 28(2)(b) were invoked, a few county officials would continue to be unjustly and unconstitutionally enriched relative to their colleagues. The Court thus permitted the issue to be relitigated *prospectively.* The *Clark* Court specifically held, however, consistent with the notion that § 28(2)(b) does not permit relitigation of the original dispute, that the county could not reopen the first suit to seek refund of the increased salary amounts already paid. *Id.* at 345, 502 A.2d at 142.

In sum, we find that § 28(2)(b) is not applicable. The O'Learys have not brought a "different demand." They seek, rather, to relitigate an issue arising out of the selfsame dispute dismissed by the Court of Common Pleas. Thus, notwithstanding that there may have been an intervening change in the law, the O'Learys may not invoke § 28(2)(b) to defeat Liberty Mutual's otherwise valid defense of collateral estoppel.

## IV. CONCLUSION

Because we find that the district court properly determined that relitigation of the

---

12. For example, illustration 4 to § 28 states:

    A, a non-profit organization, brings an action against B, the tax commissioner, for a refund of property taxes on the ground that it is exempt as a charity. The court gives judgment for B, adopting a narrow definition of the charitable exemption. Shortly after, a higher court of the same jurisdiction grants a property tax refund to C, an organization quite similar to A, and in doing so formulates a much broader definition of the exemption. In a *subsequent action* by A against B for a refund of property taxes *paid for the following year,* A is not precluded from asserting that it is entitled to the charitable exemption. It does not matter that the nature of A's activities has not changed since the first action. Restatement (Second) of Judgments § 28 illustration 4, at 278 (1982) (emphasis added).

§ 303(a) issue is precluded under Pennsylvania law, and that the facts do not warrant an exception to the general rule of issue preclusion based on an intervening change in the law, the district court's grant of summary judgment in favor of Liberty Mutual will be affirmed.