Atuahene OPPONG, Plaintiff,

v.

**FIRST UNION MORTGAGE CORPORATION, Wells Fargo Home Mortgage, Inc., and Francis S. Hallinan Defendants.**

No. CIV.A. 02–2149.

United States District Court,
E.D. Pennsylvania.

Dec. 29, 2005.

---

8. CCMUA is a county agency.

Atuahene Oppong, Philadelphia, PA, pro se.

Steven J. Adams, Stevens & Lee, Reading, PA, Autherine B. Smith, Daniel S. Bernheim, Silverman Bernheim & Vogel, Philadelphia, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

Plaintiff Atuahene Oppong, a *pro se* litigant,[1] filed this action against defendants First Union Mortgage Corporation ("First Union"), Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), and Francis S. Hallinan ("Mr. Hallinan") in *federal court under* the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. § 1692 *et seq.*, based on defendants' efforts to foreclose on a defaulted mortgage secured by plaintiff's residence, located at 7200 Sprague Street in Philadelphia. Plaintiff also raised state law claims of assault and intentional infliction of emotional distress.

On December 30, 2003, the Court granted summary judgment for all defendants finding that none of the defendants were "debt collectors" under the FDCPA. As the remaining state law claims were supplemental to plaintiff's FDCPA claim, the Court exercised its discretion and dismissed the state law claims without prejudice.

On appeal, the Third Circuit Court of Appeals affirmed the Court's judgment as to defendants First Union and Mr. Hallinan. However, the Court of Appeals vacated the judgment as to defendant Wells Fargo, finding there were genuine issues

of material fact regarding Wells Fargo's debt collector status.

Following remand, defendant filed a second motion for summary judgment (doc. no. 46) on March 14, 2005. As part of discovery, the Court directed Wells Fargo to provide plaintiff with a copy of its Income Statement and Balance Sheet for 2001 along with data for a three month period during 2001 relating to loans serviced by Wells Fargo. That data is referred to as a quarterly "snapshot" of Wells Fargo's operations.

Wells Fargo filed supplemental briefs in support of its motion for summary judgment (doc. no. 59, 65), incorporating the information revealed in the "snapshot." Oppong filed a cross motion for summary judgment (doc. no. 60). In its motion for summary judgment and supplemental briefs, Wells Fargo argues that (1) plaintiff's claim is barred by res judicata, collateral estoppel and the *Rooker–Feldman* doctrine, and (2) plaintiff cannot prove that Wells Fargo is a "debt collector" within the meaning of the FDCPA. Oppong argues that defendant is a "debt collector" because it admittedly collects the debt of others as a small but regular part of its business and it did not give proper notice of the debt.

The Court will grant defendant's motion for summary judgment because plaintiff's claim is barred by res judicata. In turn, the Court will deny plaintiff's motion for summary judgment.

## II. FACTS

The plaintiff's only claim still before the Court is that Wells Fargo failed to give notice of validation of the debt under the FDCPA, 15 U.S.C. § 1692g, before instituting a foreclosure action in the Philadel-

---

1. Though not formally schooled in the law, Oppong has proven to be a resilient and sophisticated litigator who for years has battled the defendants to a draw in both the federal and state courts.

phia Court of Common Pleas. *See* Compl. at ¶ 16. The FDCPA requires the following information to be included in the notice: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that the consumer has 30 days to dispute the debt in writing, after which time the debt collector will provide a copy of the debt verification; and (4) a statement that, upon written request, the debt collector will provide the name and address of the original creditor, if different. 15 U.S.C. § 1692g(a). Plaintiff claims that during the foreclosure trial, on January 25, 2002, Wells Fargo handed him a document that was to serve as the notice of validation of debt. *See* Compl. at ¶ 16. Oppong alleges that, because notice was given once the foreclosure action had already begun in state court, defendant did not comply with the FDCPA. Prior to trial, however, Wells Fargo sent a letter to Oppong on February 26, 2001 which it claims complied with the notice requirement of the FDCPA.

Plaintiff also claims that Wells Fargo furnished deceptive forms in violation of 15 U.S.C. § 1592j(a) by creating a false belief that Wells Fargo had actually succeeded First Union as the creditor of the debt. *See* Compl. at ¶ 18. Several other allegations in Count I of the complaint concern this alleged false or deceptive participation of First Union and/or Wells Fargo in the foreclosure proceedings.[2]

## III. DISCUSSION

### A. *Summary Judgment Standard of Review.*

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" only if its existence or non-existence would affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" only when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. *Id.* In determining whether there exist genuine issues of material fact, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 305–06 (3d Cir.2001) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

### B. *"Debt Collector" Under the FDCPA.*

Before addressing whether the plaintiff's claims are barred by res judicata or collateral estoppel, the Court must determine whether Wells Fargo qualifies as a "debt collector" within the meaning of the FDCPA. The FDCPA, 15 U.S.C. § 1692a(6), defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

---

**2.** Wells Fargo succeeded First Union as the owner of the mortgage at issue. There was some dispute about the substitution of Wells Fargo in the state foreclosure proceeding. Judge Cohen of the Philadelphia Court of Common Pleas squarely determined that Wells Fargo was a proper party to the action and that Oppong misunderstood the law. *See* Tr. Jan. 25, 2002 at 10–11. Several of plaintiff's allegations concern deception in violation of the FDCPA, an argument that the state court declared to be without merit.

As to the first prong of the statute, ("principal purpose"), in deciding the first motion for summary judgment, the Court described Wells Fargo's business practices as follows:

> The evidence on record shows that Wells Fargo is a subsidiary of Wells Fargo & Company, a "diversified" financial services company and that defendant Wells Fargo, a California corporation, is a home lender providing mortgage servicing to its customers. The record also shows that Wells Fargo purchased, pursuant to a Servicing Rights Purchase and Sale Agreement entered into between it and First Union on August 31, 2000, approximately $36 billion in residential mortgage loans from First Union, of which plaintiff's loan was an infinitesimal part of the transaction. Thus, it appears that Wells Fargo's principal purpose is the making and servicing of mortgages and loans.

*Oppong v. First Union Home Mortgage, Inc.,* No. 02-2149, 2003 WL 23162436, at *4, 2003 U.S. Dist. LEXIS 23722, at *10-11 (E.D.Pa. Dec. 21, 2003), *vacated in part,* 112 Fed.Appx. 866 (3d Cir.2004). Therefore, because Wells Fargo's "principal purpose" is the making and servicing of mortgages and loans, its debt collection activities do not come within the ambit of the first prong of the statute.

The issue now before the Court is whether Wells Fargo's debt collection activities fall within the second prong of the statute, i.e. is Wells Fargo "regularly" engaged in debt collection based on the additional evidence from the snapshot of defendant's business operations ordered by the Court.

The definition of "regular" within the meaning of the FDCPA is a novel issue in the Third Circuit.[3] Regular is defined in the dictionary as "orderly, methodical, . . . recurring, attending, or functioning at fixed or uniform intervals." Webster's Ninth New Collegiate Dictionary 992 (1990). Under this definition, there are two distinct meanings of "regular" that could apply to the term "debt collector" under the FDCPA: (1) "regular" could refer to the frequency and consistency of debt collection activities ("the frequency approach"); or (2) "regular" could refer to the proportion of debt collection activity in relation to all business activities performed by the party at issue ("the aggregate approach"). The courts are split as to the correct approach.

*1. The Frequency Approach.*

Courts relying on the frequency of debt collection activity regardless of the overall amount in relation to other business activities focus on the consistent nature of the activity. Thus, debt collectors are those who frequently and consistently perform debt collection activities as part of their business services. Under this approach, the percentage of debt collection business in relation to the defendant's other business is not relevant.

The closest the Third Circuit has come to this issue is *Crossley v. Lieberman,* 868 F.2d 566 (3d Cir.1989). In *Crossley,* the issue was whether a lawyer was a debt collector under the FDCPA. The court reviewed the legislative history of the FDCPA, noting that, initially, the Act contained an exemption for lawyers. In 1986, Congress amended the Act to remove the exemption because more lawyers than laypersons were conducting debt collection activities and using the exemption to avoid

---

**3.** In *Crossley v. Lieberman,* 868 F.2d 566 (3d Cir.1989), the Third Circuit referred to the "regularly" requirement of the FDCPA. The court's decision in *Crossley* is discussed below.

liability. *See id.* at 569 (citing H.R.Rep. No. 495 (1985), *reprinted in* 1986 U.S.C.C.A.N. 1752, 1752) (noting that 5000 lawyers were engaged in debt collection as opposed to 4500 lay firms). The court went on to quote sweeping language from a "leading commentator on the statute," who noted that "[b]oth sides in the floor debate conceded that the amendment would make the act apply not only to those lawyers who have collection practices but also those who collect on an occasional basis and the small law firm which collects debts incidentally to the general practice of law." *Id.* (quoting R. Hobbs, *Attorneys Must Now Comply with Fair Debt Collection Law*, X Pa. L.J. Rptr., No. 46, at 3 (Nov. 21, 1987)). Regardless, the court noted that in addition to the client on whose behalf he had written the debt collection letter at issue, the lawyer "represented at least three other creditors, and that he had an ongoing relationship with Fleet for at least ten years." [4] *Id.* at 570.

The exact impact of *Crossley* is unclear for two reasons. One, the Third Circuit has not revisited the question of what "regularly" means under the FDCPA since *Crossley*. Two, and more importantly, because the facts in *Crossley* showed so compellingly that the defendant was a debt collector even if the frequency approach was not used, it is difficult to read *Crossley* as adopting this approach as the law in the circuit.[5] *See, e.g., Goldstein v. Hutton*, 374 F.3d 56, 62 (2d Cir.2004) (noting that the "handful" standard has "no precedential basis"); *Schroyer v. Frankel*, 197 F.3d

4. Before reaching the Third Circuit, both the bankruptcy court and the United States District Court for the Eastern District of Pennsylvania determined that the lawyer was a debt collector under the FDCPA. *See Littles v. Lieberman*, 90 B.R. 669 (Bankr.E.D.Pa.1988) (recommended proposed findings of facts and conclusions of law), *affirmed by* 90 B.R. 700 (E.D.Pa.1988), *affirmed by Crossley v. Lieberman*, 868 F.2d 566 (3d Cir.1989). Although Judge Van Antwerpen, then of the district court, determined that the issue if liability under the FDCPA was moot because of another finding of fact, he did address the issue (pursuant to 28 U.S.C. § 157(c)(1), which allows a bankruptcy judge to decide issues that are not core issues, but are related to the chapter 11 proceeding). *See Littles*, 90 B.R. at 706. Judge Van Antwerpen held that the FDCPA applies to a lawyer "with a general practice including a minor but regular practice in debt collection." *Id.* at 707 (he referred to the legislative history of the act, as interpreted by one scholar who declared "Congress has not defined 'regularly,' but the legislative history indicates that attorneys must interpret this term broadly .... Thus, any law firm collecting debt for its clients on more than an 'isolated' basis (which theoretically could mean *once*) probably falls within the language of the statute." (quoting M. Sweig, *Guidelines for Consumer Debt Collection by Attorneys Under the 1986 Amendment to the Fair Debt Collection Practices Act*, 21 N. Eng. L.Rev. 697, 698 (1987))).

5. The frequency approach was employed in this district in *Silva v. Mid Atlantic Management Corporation*, 277 F.Supp.2d 460 (E.D.Pa.2003). In *Silva*, a plaintiff sued her homeowners' association and its lawyer under the FDCPA for the manner in which late fees assessed against her were collected. In response, the law firm argued that it was not a debt collector under the FDCPA because less than 1% of the firm's gross revenues came from debt collection. *See id.* at 464. The district court disagreed, noting that "services may be rendered 'regularly' even though these services amount to a small fraction of the firm's total activity." *Id.* at 466 (quoting *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir.1999), citing *Stojanovski v. Strobl & Manoogian, P.C.*, 783 F.Supp. 319, 322 (E.D.Mich.1992), which reached a result consistent with the frequency approach although the Sixth Circuit disagreed). The law firm consistently had at least ten debt collection matters every year, which amounted to "regular" activity under the FDCPA despite the relatively small percentage of total revenue those matters represented. Judge Robert Kelly declined to find that the Third Circuit's opinion in *Crossley* was a clear adoption of the views expressed in the legislative history and the scholarly commentary.

1170, 1175 (6th Cir.1999) (determining that *Crossley* was based on defendant's own admission that debt collection was a principal part of his business); *Silva v. Mid Atlantic Management Corporation*, 277 F.Supp.2d 460 (E.D.Pa.2003) ("we are hesitant to conclude that the article quoted in *Crossley* constitutes Third Circuit precedent"); *Mertes v. Devitt*, 734 F.Supp. 872, 874 (W.D.Wis.1990) (*Crossley* is "factually distinct").

Closer on point are the decisions of the Fifth and Second Circuits. In *Garrett v. Derbes*, 110 F.3d 317 (5th Cir.1997), the Fifth Circuit reversed the district court's finding that a law firm did not regularly collect debts because its collection work accounted for only 0.5% of its entire business. *Id.* at 318. The Fifth Circuit reasoned that "[c]learly, Congress must have intended the 'principal purpose prong' of § 1692a(6) to differ from the 'regularly' prong." *Id.* (citing *Jarecki v. Searle & Co.*, 367 U.S. 303, 307–08, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961), for the proposition that a court may not read a statute in a way that makes another provision redundant). In order for "regularly" to have a separate meaning from "principal purpose," it cannot simply refer to the percentage of debt collection activity performed in relation to the aggregate business services provided. If the "volume" of a lawyer's collection activity is great enough, the court held, then it matters not that debt collection is a small percentage of his total business activity. *Id.* The volume of letters sent, 639, was enough to subject the lawyer to liability under the Act even though the overall percentage was low, 0.5%.

The Second Circuit arrived at essentially the same result by a slightly different a rationale. The Second Circuit in *Goldstein v. Hutton*, 374 F.3d 56 (2d Cir.2004), undertook the statutory consideration of the term debt collector. The Second Circuit distinguished the meaning of "principal purpose" from that of "regularly," finding that the inquiry into the percentage of aggregate business activity goes to satisfy the former rather than the latter. "Focusing a regularity inquiry primarily on the proportion of overall work or firm revenue, a factor easily affected by size and service pricing determinations of the law practice, blurs the distinction between the 'principal purpose' and 'regularly' aspects of the statutory definition of debt collector." *Id.* at 61. Therefore, the percentage of debt collection in the aggregate goes to satisfy the "principal purpose" prong and it is not relevant to determine "regular" collection of debts under the FDCPA.

The Second Circuit determined that, although it amounted to only 0.5% of the firm's total business, the sending of 145 notices over a 12 month period, the pattern in which they were sent, the ongoing relationship with the client and the system in place for sending the notices constituted "regular" debt collection activity under the FDCPA. *Id.* at 63.

### 2. The Aggregate Approach.

Court's following the latter approach, i.e. examining the amount of debt collection performed in the aggregate, have essentially established threshold percentages of how much debt collection activity qualifies as "regular" and how little does not. The defendant Wells Fargo argues that the Court should employ this aggregate approach.

At least two circuits have endorsed the aggregate approach. The Fourth Circuit in *Scott v. Jones*, 964 F.2d 314 (4th Cir. 1992), affirmed the district court's finding that the language of the FDCPA is clear, and that " 'regularity' is shown by the sheer volume of Jones' business," at least 70% of which was generated by debt col-

lection activities.[6] *Id.* at 316. The Fourth Circuit, purportedly applying a plain meaning approach, declined to engage in a review of the legislative history of the Act.

In *Schroyer v. Frankel,* 197 F.3d 1170, 1176 (6th Cir.1999), the Sixth Circuit held that "a plaintiff must show that the attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of its general law practice." The court affirmed the district court's decision that 2% of one firm's aggregate business and 7.4% of the other firm's aggregate business did not equal "regular" debt collection under the FDCPA.[7] *Id.* The facts established, the court held, "that Defendants' debt collection activities were incidental to, and not relied upon or anticipated in, their practice of law, and that they should not be held liable as 'debt collectors' under the FDCPA." *Id.* at 1177.

Two district courts within the Seventh Circuit have also applied the aggregation definition of "regularly" to determine whether defendants were "debt collectors" under the FDCPA. In *Mertes v. Devitt,* 734 F.Supp. 872 (W.D.Wis.1990), the United States District Court for the Western District of Wisconsin held that a lawyer who averaged less than two debt collection matters per year—less than 1% of his practice—did not "regularly" engage in

debt collection activity under the FDCPA. The court reviewed the legislative history of the Act and rejected the argument that Congress intended, when it removed the specific exemption for lawyers from the Act, to subject those who engaged in only incidental debt collection to liability under the FDCPA. *Id.* at 874.

In *Mladenovich v. Cannonito,* No. 97-4729, 1998 WL 42281, 1998 U.S. Dist. LEXIS 985 (N.D.Ill. Jan. 30, 1998), the United States District Court for the Northern District of Illinois examined the volume of debt collection activity in relation to other work. In so doing, the court held that a lawyer was not a debt collector because only 1.4% of his legal fees were earned from collection matters. *Id.,* 1998 WL 42281, at *3, 1998 U.S. Dist. LEXIS 985, at *8. The court specifically rejected the frequency arguments made by plaintiff, reasoning that the debt collection activity before the court was more analogous to those cases employing the aggregate method. *Id.,* 1998 WL 42281, at *3–4, 1998 U.S. Dist. LEXIS 985, at *9–10.

### 3. The Frequency Approach is the Correct Approach.

▉ Whether the frequency approach or the aggregate approach is the correct method of determining who is a debt collector is a matter of statutory interpretation. The best evidence of legislative in-

---

6. The court also determined that the defendant's debt collection activities satisfied the "principal purpose" definition under the FDCPA. *Id.*

7. The Sixth Circuit rejected the plaintiff's argument that *Crossley* applied to allow a lawyer to qualify as a debt collector when "he does so as an incidental part of his regular practice of law." *Id.* at 1175. The court determined that "the question of whether the defendant 'regularly' collected debts was not actually before the *Crossley* court". *Id.* The conclusion is based on the quotation in *Cross-*

*ley* to the lawyer's deposition testimony wherein he stated that debt collection was a "principal part" of his business during the period when he sent the letters complained of by the plaintiffs. *Crossley,* 868 F.2d at 569–70 (citing deposition). The Third Circuit's opinion, however, was not based on that fact alone. *See id.* at 570 & n. 2 (noting the number of cases Lieberman filed that related to debt collection and that he represented the same creditor for ten years). To the contrary, the court's holding in *Crossley* was broader than the Sixth Circuit acknowledged.

tent is the language of the statute itself. Where the language of the statute is clear and unambiguous, the plain meaning of the statute controls. *See United States v. One "Piper" Aztec De Luxe Model 250 PA 23 Aircraft*, 321 F.3d 355, 358 (3d Cir.2003) (citations omitted). In doing so, the Court must follow the "cardinal rule that a statute is to be read as a whole, ... since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (citing *Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) and *Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 26, 109 S.Ct. 278, 102 L.Ed.2d 186 (1988)).

Here, the language of the statute read in context is clear. The definition of "debt collector" is in the disjunctive. In other words, a debt collector is one whose "principal purpose" is the collection of debts of another *or* one who "regularly" collects or attempts to collects the debts of another. *See* 15 U.S.C. § 1692a(6). Both prongs are entitled to their full import. Thus, if the "regularly" prong is construed as a proportion of the overall business activities, that construction would render the "principal purpose" prong as surplusage or redundant. "[C]ourts should, [however,] construe statutory language to avoid interpretations that would render any phrase superfluous." *See United States v. Cooper*, 396 F.3d 308, 312 (3d Cir.2005).

The Court will adopt the frequency approach for two reasons. One, the aggregate approach strips the "principal purpose" prong of its meaning, making it superfluous or redundant. Two, to construe "regular" to mean frequently and consistently, and "principal purpose" to mean the proportion of the debt collection activities in relation to the overall business, gives meaning to the congressional intent that the term "debt collector" apply in the disjunctive. The frequency approach, therefore, ensures that both phrases have meaning within the context of the FDCPA and that neither is surplusage. *See King*, 502 U.S. at 221, 112 S.Ct. 570 (statute, plain language or not, must be read as a whole); *Cooper*, 396 F.3d at 312 (avoid an interpretation that would render any phrase superfluous).

Applying the frequency approach in this case, Wells Fargo qualifies as a debt collector under the FDCPA. Under the facts disclosed by the snapshot of Wells Fargo within a three-month period, it was submitted that Wells Fargo originated 410,205 mortgage loans and acquired 141,595 mortgage loans, 89 of which were delinquent when acquired. *See* Def.'s Supp. Mem. of L. (doc. no. 59) at 1. It is those 89 acquired delinquent mortgage loans that constitute debt collection activity and that must be assessed for their "regularity."[8]

Wells Fargo's manager of default servicing, Kristina Nagel, submitted an affidavit that the snapshot was typical of defendant's mortgage origination and acquisition activity for the year prior to and after the snapshot period. *See* Cert. of Kristina Negel at ¶¶ 5 and 9. The snapshot shows that Wells Fargo regularly conducts debt collection activity within the meaning of the FDCPA because the company frequently and consistently acquires an esti-

---

8. Plaintiff argues in his motion for summary judgment that Wells Fargo is a debt collector under the "principal purpose" prong of the definition based on the snapshot discovery. *See* Pl.'s Mem. of L. in Support of Pl's Mot. for Summ. J. at 4. The Court need not address that argument because the principal purpose of Wells Fargo's business is not debt collection, as noted above.

mated 356 delinquent mortgage loans each year.[9] Under the FDCPA, it matters not that the percentage of those loans in the aggregate of all mortgage loan activity conducted by Wells Fargo is small. Wells Fargo is a debt collector under the FDCPA because it frequently and consistently collects or attempts to collect on defaulted loans as a part of its business activities.

### C. Res Judicata.

Now that Wells Fargo is a debt collector under the FDCPA, the inquiry is whether Wells Fargo's failure to satisfy the notice requirement of the FDCPA was already litigated in the prior state court foreclosure action. Wells Fargo's main argument is that the issues before the Court were addressed in the state court proceeding and, therefore, plaintiff should not be allowed to relitigate those issues in federal court. Oppong argues that the issue of notice was not decided and should be addressed now as part of his motion for summary judgment. The Court agrees with Wells Fargo that plaintiff's claims are barred by res judicata.

■■■ The court must look to the law of the adjudicating state to determine whether Oppong's suit is barred by res judicata. *See O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062 (3d Cir.1991). The doctrine of res judicata, or claim preclusion, prevents a later action based on all or part of a claim that was actually litigated or that could have been litigated in a prior action between the same parties or their privies. *See Urrutia v. Harrisburg Police Dep't*, 91 F.3d 451, 461 (3d Cir.1996) (citing *Hopewell Estates, Inc. v. Kent*, 435 Pa.Super. 471, 646 A.2d 1192, 1194–95 (1994)). Here, the prior adjudication was in the Philadelphia Court of Common Pleas, therefore Pennsylvania preclusion law governs. Under Pennsylvania law, res judicata bars a subsequent suit if the following factors are present: (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued. *See O'Leary*, 923 F.2d at 1065 (citing *McNasby v. Crown Cork & Seal Co., Inc.*, 888 F.2d 270, 276 (3d Cir.1989) (applying Pennsylvania law)).

■■■ Applying Pennsylvania law to the instant case, the prior proceeding is the foreclosure action brought by Wells Fargo in the Court of Common Pleas after plaintiff defaulted on his mortgage payments. The trial of the foreclosure action occurred before Judge Gene Cohen of the Philadelphia Court of Common Pleas. Oppong's defense to the foreclosure action was that the mortgage company breached the contract because he was not in default on his mortgage and Wells Fargo did not comply with the notice requirements of the FDCPA or the Real Estate Settlement Procedure Act. *See* Tr. Jan. 25, 2002 at 3–4; Tr. Jan. 28, 2002 at 29, 35.

At trial, Oppong questioned Michelle Jeffries, a litigation specialist at Wells Fargo who monitors litigation cases for defaults, foreclosures and bankruptcy, on the issues. *See* Tr. Jan. 28, 2002 at 32. The exchange and ruling before Judge Cohen were as follows:

BY MR. OPPONG:

Q: The next question I have for you, are you aware of the federal debt collection practices act requires Wells Fargo to confirm the existence and amount for the mortgage debt? That question I have asked.

---

**9.** This 356 loan figure comes from multiplying the "typical" quarterly amount of 89 delinquent loans by four.

Are you aware—yesterday or Friday, that the attorney handed defendant the amount of the loan that is owed?

A: The payoff. Yes.

Q: He payoff. Okay. So are you, from your litigation point, could you say that the amount was handed to Mr. Oppong, the defendant, that he has 30 days to respond to that or not?

A: I couldn't say.

Q: Well, by law he has 30 days to respond to that, to dispute that or not.

MS. SHAH–JANI [counsel for Wells Fargo]: Your Honor, I'm going to object. It's been asked and answered.

THE COURT: Sustained.

MR. OPPONG: I'm done with you. Let me get my closing.

MS. SHAH–JANI: I have redirect, Your Honor, if I may.

\* \* \* \* \* \*

BY MS. SHAH–JANI:

Q: Miss Jeffries, showing you what's been marked Plaintiff's Exhibit P–5. Could you please tell the Court what that is, what the date of the letter is?

A. This is the hello and good-bye letter that I referenced in previous testimony. It's dated February 26, 2001.

Q: Is it addressed to the defendant?

A: It's addressed to Atuahene Oppong, yes.

\* \* \* \* \* \*

Q: What does the letter state? First of all, who is the letter from?

A. The letter is actually signed by both First Union and Wells Fargo representatives. This is the letter advising Mr. Oppong that First Union Mortgage Corporation is transferring the servicing of the mortgage loan to Wells Fargo effective March 16, 2001. It kind of lists some brief information about Wells Fargo.

\* \* \* \* \* \*

Q: Is this the letter that you were referencing in response to Mr. Oppong's questions in the notice of the transfer of the loan?

A: Yes it is.

\* \* \* \* \* \*

BY MR. OPPONG:

Q: This piece of paper that has just been handed to you, do you see anywhere that it says that—read this simple statement, that these two companies are making attempt to confirm the existence of the debt and the amount. Is there any amount stated there?

A: There is no amount in this letter.

Q: So this letter did not state any amount.

A. Correct.

\* \* \* \* \* \*

CLOSING BY MR. OPPONG: What I like to say that defendant have established a prima facie case for the dismissal of this complaint. Plaintiff have not performed his part of the federal law requirements that regulate this debt. Plaintiff's complaint should be dismissed as a matter of law.

\* \* \* \* \* \*

RULING BY THE COURT: The Court finds that the plaintiff has complied with the act 6 of the mortgage foreclosure law, and the Court is convinced that the assignment and proof of the assignment has been filed of record. And notice

was given to defendant in this matter incorporating the evidence presented in trial as well as the pretrial statements of the both the plaintiff and defendant. Court will make a finding in favor of the plaintiff and against the defendant in the complaint in mortgage foreclosure amount of $117,549.22 including interest, costs and attorneys fees. That is the verdict of the Court.

*See* Tr. Jan. 28, 2002 at 35–39.

It is clear that Oppong directly raised his FDCPA claim of inadequate notice at trial and presented evidence to support that defense. The court ruled on the merits of the case, thus "a court of competent jurisdiction has determined a litigated case *on its merits*" and claim preclusion applies.[10] *See Wade v. City of Pittsburgh,* 765 F.2d 405, 408 (3d Cir.1985) (quoting *Bearoff v. Bearoff,* 458 Pa. 494, 327 A.2d 72, 74 (1974)). The issue of notice under the FDCPA, therefore, was decided on the merits during the state court foreclosure action. *See Wade,* 765 F.2d at 408 ("it should appear ... that [the earlier decision] rested on the precise questions which it is sought to again agitate" (quoting *Haefele v. Davis,* 399 Pa. 504, 160 A.2d 711, 713 (1960))).

Wells Fargo has also shown that, in addition to the "on the merits" prong, it satisfies the other prongs of the res judica-

ta test. "Although consistent in demanding satisfaction of these four criteria, the state courts have avoided mere technical adherence to mechanical principles." *See Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988) (citation omitted). First, there is identity of issues as the same subject matter—notice—underlies both suits. *Id.* at 116–17. That the issue was a defense to the state foreclosure action and a part of the complaint in this action is inapposite. *See id.* at 116 ("technical adherence" is not required).

Second, identity of causes of action, though not determined by a bright line rule, is based on the following factors: (1) the acts complained of and the relief sought are the same; (2) the theory of recovery is the same; (3) the same evidence is needed to maintain the second action; and (4) the material facts alleged are the same. *See O'Leary,* 923 F.2d at 1065 (quoting *United States v. Athlone Indus., Inc.,* 746 F.2d 977, 984 (3d Cir. 1984)). In the foreclosure action, Oppong complained that Wells Fargo did not give notice and produced both the February 26, 2001 letter and the January 25, 2002 letter in addition to the testimony of a Wells Fargo employee as evidence of that claim. There is identity of issues.

Third, there must be identity of the persons and the parties to the action.

10. In support of its motion for summary judgment based on res judicata, Wells Fargo relies on a remark by Judge Cohen that Oppong's claims under the FDCPA and the Real Estate Settlement Procedure Act "have been ruled on against the defendant both [in] the Court of Common Pleas and the United States District Court for the Eastern District of Pennsylvania." Exs. to Def.'s Mot. Summ. J. (doc. no. 48), Ex. "M" of Ex. "B." Specifically, Judge Cohen noted that Oppong had raised these issues in several pre- and post-trial motions, all of which were addressed. *Id.* The

opinion, however, did not cite to any earlier orders or offer any details.

The Court need not decide whether Judge Cohen's statement alone is support to bar Oppong's claim by res judicata, given that Judge Cohen heard argument and evidence on the issue of notice under the FDCPA and ruled that "notice was given to defendant [Oppong] in this matter incorporating the evidence presented in trial as well as the pretrial statements of the both the plaintiff [Wells Fargo] and defendant [Oppong]." Tr. Jan. 28, 2002 at 39.

Both Oppong and Wells Fargo were parties to the state foreclosure action, so this requirement is easily satisfied. Fourth, there must be identity of capacity of the parties suing and being sued. Although Oppong was the defendant in the foreclosure action brought in state court and is the plaintiff in the subsequent federal action, and vice-versa for Wells Fargo, there is still identity of capacity. *See O'Brien v. Valley Forge Specialized Educ. Servs.*, No. 03–3984, 2004 WL 2316425, *9, 2004 U.S. Dist. LEXIS 20655, at *30 (E.D.Pa. Oct. 13, 2004). In *O'Brien*, a father filed suit in federal court as a trustee on behalf of his minor children in a dispute over unpaid tuition. In the state court action, the father was the defendant in a suit brought by the school to collect the tuition and the court still found identity of capacity. *See id.*

The prior state foreclosure action involved whether proper notice was afforded Oppong under both federal and state law. Oppong presented both argument and evidence on the claim. The court heard the evidence and decided the claim on the merits. Therefore, claim preclusion applies and the claim is barred by res judicata.[11]

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. Wells Fargo is a debt collector under the FDCPA because it regularly engages in debt collection activities. Whether defendant complied with the notice requirement of the FDCPA was previously decided by the Philadelphia Court of Common Pleas. Thus, under principles of claim preclusion, plaintiff's action is barred by the doctrine of res judicata. An appropriate order follows.

### ORDER

**AND NOW**, this **29th** day of **December 2005**, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (doc. no. 46) is **GRANTED** and Plaintiff's Motion for Summary Judgment (doc. no. 60) is **DENIED**.

**IT IS FURTHER ORDERED** that **JUDGMENT** shall be entered in favor of defendant and against plaintiff as to count

---

11. Wells Fargo also argues that plaintiff's claims are barred by collateral estoppel. Collateral estoppel, also known as issue preclusion, bars subsequent suit only as to issues that actually were litigated in and essential to the judgment in the first action. *See Gregory*, 843 F.2d at 116. It is narrower than claim preclusion in the sense that issue preclusion "does not prevent reexamination of issues that might have been, but were not, litigated in the earlier action." *Id.* (citation omitted). The Court need not address the applicability of collateral estoppel because plaintiff's claims are barred by res judicata.

Wells Fargo also invoked the *Rooker–Feldman* doctrine in support of its motion for summary judgment. Again, because plaintiff's claims are barred by res judicata, the Court need not determine the applicability of the *Rooker–Feldman* doctrine. In any event, the Supreme Court has recently directed lower courts to decide whether a state court judgment precludes subsequent federal court review of the same issue under principles of claim preclusion when the federal court has concurrent jurisdiction to hear the claim. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 1527, 161 L.Ed.2d 454 (2005) ("If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ...', then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir.1993))). In any event, since the Court has decided that under principles of claim preclusion the suit is barred, it need not decide whether technically *Rooker–Feldman* is also implicated.

I of plaintiff's complaint.[1]

**AND IT IS SO ORDERED.**

1. All claims against all parties having been adjudicated by this judgment and the Court's order of December 30, 2003 (doc. no. 38), the case shall be marked **CLOSED**.